# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EMMA SERNA d/b/a SERNA & ASSOCIATES
CONSTRUCTION CO., LLC,

       Plaintiff,

v.                                       CV 17-20 JB/WPL

MARGETTE WEBSTER; DAVID WEBSTER;
STATE OF NEW MEXICO, U.S. Judicial
Court Division; CLAYTON CROWLEY;
ALEX CHISHOLM; CARL BUTKUS; CINDY MOLINA;
ALAN MALOTT; BEATRICE BRICKHOUSE;
BOBBY JO WALKER; JAMES O'NEAL;
ROBERT BOB SIMON; ESTATE OF PAUL F. BECHT;
CARL A. CALVERT; JOEY MOYA; AMY MAYER;
GARCIA MADELIENE; ARTHUR PEPIN; MONICA ZAMORA;
CHERYL ORTEGA; JOHN DOE #1; PAT MCMURRAY;
MARTHA MUTILLO; SALLY GALANTER; NEW MEXICO
CONSTRUCTION INDUSTRIES DIVISION; ROBERT "MIKE"
UNTHANK; MARTIN ROMERO; AMANDA ROYBAL;
NAN NASH; and JOHN WELLS,

       Defendants.

## SECOND PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Despite being filed in January 2017, this case has already endured an unusually large amount of motion practice and other filings. This Second Proposed Findings and Recommended Disposition ("Second PFRD") will recommend disposition of the following motions and other filings, in the order in which they were filed:

1. Pro se Plaintiff Emma Serna's request to refile a lien expunged by the state district court (Doc. 11);

2. Serna's motion for injunctive relief from the Second Judicial District Court for the State of New Mexico (Doc. 20);

3. Serna's motion for an order directing the Bernalillo County Clerk to "dismiss the expungement" of a lien (Doc. 21);

4. Defendant Clayton Crowley's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(4), (b)(5), and (b)(6) (Doc. 23);

5. Serna's second motion for injunctive relief (Doc. 24);

6. Serna's motion for default and default judgment as to Crowley (Docs. 26, 27);

7. Serna's motion for default and default judgment as to Defendant Margette Webster (Doc. 28);

8. Serna's motion for default and default judgment as to Defendant David Webster (Doc. 29);

9. Serna's motion for default and default judgment as to Defendant Alex Chisholm (Doc. 30);

10. Serna's motion for default and default judgment as to Defendant Carl Calvert (Doc. 31);

11. Serna's motion for default and default judgment as to Defendant Robert "Bob" Simon (Doc. 32)

12. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) filed by the following Defendants: Judge Monica Zamora, Judge Beatrice Brickhouse, Judge Carl Butkus, Judge Alan Malott, Joey Moya, Amy Mayer, Madeline Garcia, Lynette Rodriguez[1], Arthur Pepin, Cheryl Ortega, James Noel, Cindy Molina, Bobby Jo Walker, and the State of New Mexico (collectively, the "Judicial Defendants") (Doc. 33);

13. Defendant Carl Calvert's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6) (Doc. 34);

14. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the following Defendants: New Mexico Construction Industries Division ("CID"), Robert Unthank, Sally Galanter, Martha Murillo, Pat McMurray, Martin Romero, and Amanda Roybal (collectively, the "CID Defendants") (Doc. 36);

15. Simon's motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) (Doc. 38);

16. Defendant Judge Nan Nash's motion to dismiss (Doc. 40);

---

[1] Serna specifically lists "predicate acts" committed by Rodriguez and describes Rodriguez as a "proximate cause" to the allegations in this case, but did not list Rodriguez in the caption of the complaint. (Doc. 1 at 22.) Nonetheless, I assume that Serna intended to bring a claim against Rodriguez and thus dispose of that claim herein.

17. What I construe to be Serna's motion for sanctions against counsel for the Judicial Defendants for failing to disclose his employment status (Doc. 58);

18. Serna's request to subpoena bank statements and phone records of the Defendants (Doc. 61);

19. Serna's motion for entry of default judgment as to all Defendants (Doc. 66);

20. Serna's motion for default judgment as to Defendants Margette and David Webster (Docs. 77, 92);

21. The Judicial Defendants' motion to strike (Doc. 84) Serna's unauthorized surreply (Doc. 83);

22. Serna's motion for leave to file a surreply (Doc. 90);

23. What I construe to be Serna's second motion for sanctions against counsel for the Judicial Defendants (Doc. 91);

24. Serna's third motion for injunctive relief (Doc. 94);

25. Serna's motion for dismissal of expungement of a lien (Doc. 96);

26. Serna's motion for emergency temporary injunction (Doc. 98);

27. The Judicial Defendants' motion to impose filing restrictions on Serna (Doc. 99);

28. Serna's fourth motion for injunctive relief (Doc. 104);

29. Serna's motion to "dismiss" state court orders, which I construe as a motion for injunctive relief (Doc. 105);

30. Serna's motion for default judgment as to Defendant John Wells (Doc. 115); and

31. What I construe to be several motions to amend Serna's complaint (Docs. 7, 8, 25, 47, 61, 87, 93, 94).

Because Serna is a pro se litigant, I must construe her pleadings liberally and hold them to a less stringent standard than is required of a party represented by counsel. *See Weinbaum v. City of Las Cruces*, 541 F.3d 1017, 1029 (10th Cir. 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Liberal construction requires courts to make some allowance for a pro se

litigant's "failure to cite proper legal authority, [her] confusion of various legal theories, [her] poor syntax and sentence construction, or [her] unfamiliarity with pleading requirements." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110) (alterations omitted). However, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.*

I note that Serna has attempted to bring claims on behalf of her construction company, Serna & Associates Construction Co., LLC. Serna may not proceed pro se and represent her LLC. D.N.M.LR-Civ. 83.7; *Perry v. Stout*, 20 F. App'x 780, 782 (10th Cir. 2001) (unpublished) (citing 28 U.S.C. § 1654); (Doc. 103). At the time of writing, Judge Browning has not yet ruled on the outstanding PFRD that would dismiss the LLC as a Plaintiff. (Doc. 103.) However, I proceed under the assumption that the LLC cannot maintain its claims without representation, and thus address only the claims of Serna herself.

To the extent that Serna attempts to bring criminal claims—state or federal—against any of the Defendants, I recommend that the Court dismiss those claims sua sponte. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another" and cannot base a claim for which relief can be granted on criminal statutes. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (quotation omitted). No amount of factual amendment will convert criminal charges into cognizable civil causes of action. To the extent that Serna attempts to assert criminal claims in this case, I recommend that the Court dismiss those claims with prejudice.

## BACKGROUND

As previously stated, this case has an unusually large record for being so recently filed. Essentially, this case arises from underlying state court litigation. Serna and the Webster Defendants entered into a construction contract sometime in 2002. The work was apparently not

completed and/or paid for by mid-2004. The parties attempted to sort out the differences, but ultimately filed two separate civil cases in 2006 or 2007, and those cases were consolidated. The Websters alleged that Serna walked off the job-site, in breach of contract, and they incurred additional expenses due to that breach. Serna contended that the work was finished but the Websters did not finish paying for the work, and sued to collect those fees. In addition to suing Serna, the Websters sued Serna's husband.

In 2008, Crowley, who was then representing Serna, filed a motion for summary judgment in the consolidated cases as to Serna's husband only and seeking dismissal of Serna's husband. (Doc. 8 at 32.) The state district judge who heard the motion for summary judgment as to Serna's husband granted that motion and dismissed Serna's husband from the underlying litigation. (*Id.* at 41, 50.) Things went downhill from there.

Since that time, the consolidated cases have gone up and down the New Mexico court system with Serna doggedly insisting, at every level, that summary judgment was granted in her favor. This argument has been rejected by every level of the New Mexico courts. In fact, every level of the New Mexico courts have imposed filing restrictions on Serna because of her frivolous and abusive filings. (*See* Doc. 34-5 (imposing filing restrictions in the New Mexico Court of Appeals); Doc. 34-6 (imposing filing restrictions in the Second Judicial District Court for the State of New Mexico); Doc. 34-7 (imposing filing restrictions in the New Mexico Supreme Court).)

The allegations are as follows: the Websters filed suit in state district court in 2007, claiming that Serna walked off the job-site and breached the contract; Serna, then represented by Simon, countersued for unpaid labor. (Doc. 1 at 8-9.) Serna claims that Simon filed a motion for

partial summary judgment, but "mumbled" in court, so the motion was denied. (*Id.* at 9.) Serna then fired Simon.

Serna then hired Crowley. Crowley filed for "full summary judgment," summary judgment was granted by non-party Judge Lang, Judge Lang retired, Crowley submitted a proposed order to the state court but "was not going to correct the order," and "refused to dismiss the Webster's lawsuit" in state court. (*Id.*) Serna then fired Crowley. She later states that "Crowley committed obstruction of the law, extortion, conspiring to commit extortion, aiding and abetting, fraud, bribery, false statements to the court, illegal kickbacks, false information and misleading information, racketeering conspiracy to commit, money laundering." (*Id.* at 17.) Serna also asserts that "Crowley has blackballed the Construction Company with 90% of the attorneys in Albuquerque." (Doc. 26 at 1.)

Judge Butkus took over the underlying state case when Judge Lang retired, after Judge Lang orally granted the motion for summary judgment as to Serna's husband. (Doc. 8 at 34, 37 ("Memorandum in Support of Defendants' Motion for Summary Judgment" in state court); Doc. 8 at 41 (transcript of state court hearing with Judge Lang granting the motion for summary judgment as to Serna's husband).) Judge Butkus refused to dismiss the entire lawsuit based on Serna's misinterpretation of the proceedings. (Doc. 1 at 9.)

Serna then hired Becht. Becht drafted a motion and affidavit stating that the construction company used licensed sub-contractors. Becht then drafted a motion to dismiss the case. (*Id.*) Serna then claims that Becht "refused to dismiss the Webster's lawsuit" and conspired and attempted to defraud Serna. (*Id.*)

Judge Malott took over the case from Judge Butkus and committed, in Serna's eyes, the same sins. (*Id.*) Serna took an appeal, pro se, sometime in late 2008 or 2009. The appeal was

denied. The New Mexico Supreme Court then denied Serna's petition for certiorari in 2013. (*Id.* at 10); *but see Serna v. Webster*, 321 P.3d 126 (N.M. 2013) (table decision) (denying certiorari on December 9, 2013). Serna claims that "Mandate was sent in March, 2014 for the summary judgment." (*Id.*) This is incorrect. No such mandate exists in the record or in the state court docket. (*But see* Doc. 8 at 58-60 (opinion and mandate of the New Mexico Court of Appeals, dismissing the appeal for lack of jurisdiction).) Serna alleges that Judge Brickhouse was essentially ghostwriting materials for the New Mexico Court of Appeals. (Doc. 1 at 11.)

Judge Malott eventually recused and the case was transferred to Judge Brickhouse, after some appellate practice. (*Id.* at 10.) Judge Brickhouse also refused to sign Serna's proposed order granting Serna summary judgment based on Serna's erroneous conclusions. Judge Brickhouse then ordered the clerks of the district court not to accept additional filings from Serna without first presenting the filing to Judge Brickhouse for approval. Judge Brickhouse also directed the parties to participate in court-annexed arbitration. (*Id.*) Serna alleges that Judge Brickhouse raised her voice in the hearings. (*Id.* at 15.)

Serna alleges that district court clerk James Noel, incorrectly identified as James O'Neal, was the person to return filings to her that were not approved by Judge Brickhouse and told her that she could not file anything more. (*Id.* at 10.) Serna further alleges that Bobby Jo Walker, Judge Brickhouse's secretary or assistant, was rude to Serna and told Serna that "they don't do things the legal way." (*Id.* at 11.)

Then, in May 2014, Serna filed with the American Arbitration Association ("AAA") to invoke the arbitration clause of the underlying construction contract. AAA Arbitrator Calvert was assigned the case and held a preliminary hearing on October 20, 2014. (Doc. 8 at 62.) The Websters did not participate in that hearing. On December 14, 2014, Calvert issued a written

decision determining that he did not have jurisdiction to resolve the matter on the merits in light of the litigation history and Judge Brickhouse's order—with the parties' agreement—that the case go to binding court-annexed arbitration. (Doc. 34 Ex. 1.)

While the AAA proceeding was pending, the court-annexed arbitration was held, with Wells assigned as the arbitrator. Serna did not attend the arbitration. (Doc. 1 at 11.) An arbitral award was entered in favor of the Websters. (*Id.*) Serna never appealed to the district court. (*Id.*)

Somewhere in this procedural mess, Serna filed a second petition for writ of certiorari with the New Mexico Supreme Court. Serna alleges that Moya, the Clerk of Court, "refused to submit" any of her filings to the Justices. (Doc. 1 at 12.) Serna appears to blame Moya for the New Mexico Supreme Court's order imposing filing restrictions on her. Moya allegedly told Serna that her "problem is with the lower court judges" and refused to help Serna. (Doc. 1 at 13.)

Serna further alleges that Mayer, another clerk at the New Mexico Supreme Court, later accepted a filing and told Serna that "she was Paid to close [Serna's] case." (Doc. 1 at 12.) Serna contends that Mayer accepted a bribe. According to Serna, the Websters "compensated"—that is, bribed—Crowley, Simon, Becht, Walker, Ortega, Judge Butkus, Judge Malott, Judge Brickhouse, Judge Zamora, Moya, Mayer, Garcia and Rodriguez. (*Id.*)

Serna then filed an ethics complaint with Rodriguez, the Human Resources Manager at the New Mexico Supreme Court. Rodriguez apparently agreed to investigate the claim. It is unclear what Rodriguez allegedly did wrong. Serna appears to contend that Rodriguez refused to conduct an investigation and refused to give Serna affidavits from each of the allegedly corrupt officials.

Serna also submitted a complaint to the New Mexico Attorney General's office, where she spoke with Pepin. (Doc. 1 at 13.) Serna submitted her "unfulfilled orders" to Pepin and asked

Pepin to transmit a motion to reopen her case to the judges for the Court of Appeals. (*Id.*) Serna alleged that Mayer was being compensated/bribed. Pepin did not respond quickly enough, so Serna went to Santa Fe, where Pepin confirmed that he had received the complaint. (*Id.*) Serna then asked Pepin to draft a cover letter to the Judicial Disciplinary Board. (*Id.*) Pepin allegedly did so, and also sent a copy to the Websters. (*Id.*) Serna interprets this as proof-positive that Pepin conspired against her. Pepin's transgression appears to be, as with most of the Defendants, not acceding to Serna's whim and her interpretation of the law.

While all of this was happening, apparently, CID sent Serna a copy of a complaint that the Websters filed against her—evidently sometime in 2016. (*Id.*) The Websters alleged that Serna walked off the job, left the job partially undone, and that they had an arbitral award against her. (*Id.*) Serna disputed the name of the person to whom the arbitral award was made out—Margaret Webster as opposed to Margette Webster—and also the identity of the business. (*Id.*) She also asserted that she had summary judgment in the matter. (*Id.*)

CID inquired as to the summary judgment matter and told Serna, correctly, that she was never granted summary judgment. (Doc. 1 at 14.) Serna alleges that "these were words, that Brickhouse would say," which apparently proves that CID is part of the conspiracy. (*Id.*) Murillo, who works for CID, apparently participated in the conspiracy by mailing the complaint to Serna "without checking it out" and without independently determining if there were "any grounds for opening the complaint." (*Id.*) Galanter, a CID attorney, was complicit because she did not do anything to stop it. CID investigator Roybal looked into the complaint and "brought back documents, that made the Serna Party look bad." (*Id.*) Roybal's transgression appears to be a failure to "look into why [Judge] Brickhouse showed malaise." (*Id.*)

Serna then wrote to McMurray and Unthank, supervisors at CID, and complained that Webster caused the complaint to be mailed to Serna three weeks after filing with the intent of the complaint reaching Serna over a holiday weekend that also happened to include Serna's birthday. (*Id.*) The only real allegation against Unthank is that he told Serna he could not do anything about her complaints and would let "the commission" handle the problem. (Doc. 1 at 15.)

Serna alleges that Wells, the arbitrator, committed fraud by filling out the arbitral award incorrectly and that the incorrect names render the arbitral award void. (Doc. 1 at 14.) She also contends that Crowley went to work for the Websters when he no longer represented Serna, and that he "distributed compensation to every defendant in the list of defendants." (*Id.*) Serna specifically alleges that Crowley, on behalf of Webster, compensated/bribed McMurray, Murillo, Romero, Roybal, and Galanter. (Doc. 1 at 15 "There is only one reason [they] harassed and abused the Serna Party . . . compensation from the Websters and Crowley, and to see if the C.I.D. could correct or enforce the award in her favor.").)

It is a little unclear whether this happened before or after the CID complaint and investigation, but Serna alleges that Chisholm—the Websters' attorney—filed the "false award" against Serna with the County Clerk's office. (Doc. 1 at 15.) This is "fraudulent" because "[t]he Construction Company does not own the Serna's property, and the Websters sued Emma Serna d/b/a Serna & Associates Construction Co., LLC." (*Id.*)

In keeping with the theme, the County Clerk's Office also, allegedly, committed fraud and conspired against Serna by filing the false lien against Serna's personal property. (*Id.*)

Without factual support, Serna claims that "Webster's motive was and is extortion and harassment. They have stalked me and my family, hacked our computer, mail fraud, and phone abuse throughout the last nine years." (*Id.*)

Despite being repeatedly disabused of the notion that summary judgment on all matters was entered in her favor in 2008, Serna now claims that over thirty defendants have violated her constitutional rights and engaged in a widespread conspiracy against her. I have broken the claims against various defendants out into individual counts for ease of reference. I note that all of the RICO (racketeer influenced and corrupt organizations) claims against the individual defendants were brought as one count, but I have broken them out to facilitate analysis and crystallize the procedural background.

Count 1: Serna brings a civil claim against the Websters, pursuant to 18 U.S.C. § 1964 for RICO violations. (Doc. 1.) Specifically, Serna alleges that the Websters violated myriad federal and state laws as predicate offenses, including: deprivation of rights under color of law in violation of 18 U.S.C. § 242; conspiracy to commit offense or to defraud the United States in violation of 18 U.S.C. § 371; fraud and false statements or entries, generally, in violation of 18 U.S.C. § 1001; fraud and related activity in connection with computers in violation of 18 U.S.C. § 1030; fraud and related activity in connection with electronic mail in violation of 18 U.S.C. § 1037; false information and hoaxes in violation of 18 U.S.C. § 1038; mail fraud by means of fraud and swindles in violation of 18 U.S.C. § 1341; mail fraud by means of a fictitious name or address in violation of 18 U.S.C. § 1342; obstruction of justice by means of influencing or injuring an officer or juror, generally, in violation of 18 U.S.C. § 1503; and concealment, removal, or mutilation, generally, of records and reports in violation of 18 U.S.C. § 2071. Serna also appears to bring claims under 18 U.S.C. §§ 353, 354, and 355, but those sections do not exist.

As for state crimes, Serna alleges that the Websters violated the following state statutes as predicate offenses: fraud in violation of NMSA § 30-16-6; bribery of a public officer or public

employee in violation of NMSA § 30-24-1; extortion in violation of NMSA § 30-16-9[2] acceptance of a bribe by a witness in violation of NMSA § 30-24-3.1; soliciting or receiving illegal kickbacks in violation of NMSA § 30-41-1; and offering or paying illegal kickbacks in violation of NMSA § 30-41-2.

The Websters are sued individually.

Count 2: Serna brings a civil RICO claim against Crowley pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, 1030, 1037, 1038, and 2071; NMSA §§ 30-16-6, 30-16-9, and an allegation of money laundering in violation of NMSA § 30-51-4. Additionally, Serna alleges that Crowley violated NMRA Rule 11-404(B), which is a rule of evidence. I assume that Serna meant to allege that Crowley violated NMRA Rule 16-404(B), which is a rule of professional conduct and speaks to inadvertently sent documents and the respect for rights of third persons. Crowley is sued individually.

Count 3: Serna brings a civil RICO claim against Judge Butkus pursuant to 18 U.S.C. § 1964, and alleges a predicate offense pursuant to 18 U.S.C. § 1503. Judge Butkus is sued in his individual and official capacities.

Count 4: Serna brings a civil RICO claim against Molina pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371 and 1001; and NMSA §§ 30-16-6 and 30-41-1, and a claim of racketeering purportedly brought pursuant to NMSA § 30-42-2. Molina is sued in her individual and official capacities.

Count 5: Serna brings a civil RICO claim against Judge Malott pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 2071, as well as a

---

[2] Serna actually alleges that the Websters violated NMSA § 32-16-9. (Doc. 1 at 17.) This appears to a typographical error, as Title 32 has been repealed. Further, § 30-16-9 speaks to the crime of extortion, which is in line with Serna's allegations.

claims for fraud and related activity in connection with identification documents, authentication features, and information in violation of 18 U.S.C. § 1028; perjury, generally, in violation of 18 U.S.C. § 1621; and false declarations before grand jury or court, in violation of 18 U.S.C. § 1623. Serna also alleges state predicate offenses pursuant to NMSA §§ 30-16-6, 30-16-9, 30-41-1, and 30-41-2. Judge Malott is sued in his individual and official capacities.

Count 6: Serna brings a civil RICO claim against Judge Brickhouse pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, 1028, 1038, 1621, 1623, and 2071, as well as state predicate offenses pursuant to NMSA §§ 30-16-6 and 30-16-9. Further, Serna alleges that Judge Brickhouse violated the New Mexico Code of Judicial Conduct Canon 1, in violation of NMRA Rule 21-100; Canon 2, in violation of NMRA Rule 21-200; what I construe to be claim for violation of Rules 21-201, 21-202, 21-208, 21-209; and Rule 21-300. Serna also brings a claim against Judge Brickhouse for conspiracy to deprive Serna of her civil rights pursuant to 42 U.S.C. § 1983. Judge Brickhouse is sued in her individual and official capacities.

Count 7: Serna brings a civil RICO claim against Walker pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 1028 and 2071; NMSA §§ 30-16-9 and 30-41-2, and NMRA Rule 16-404(B). Walker is sued in her individual and official capacities.

Count 8: Serna brings a civil RICO claim against Chisholm pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 242, 371, 1001, 1028, 1341, 1342, and 2071, as well as a claim for embezzlement and theft of public money, property or records, in violation of 18 U.S.C. § 641. Strangely, Serna invokes 18 U.S.C. § 3571, which speaks to the imposition of a fine as a sentence in a federal criminal case. Chisholm is sued individually and "in his capacity as an agent for the State of New Mexico." (Doc. 1 at 4.)

Count 9: Serna brings a civil RICO claim against Simon pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 1342, as well as invoking § 3571. Serna also alleges that Simon violated NMRA Rule 16-804. Simon is sued individually and "in his capacity as an agent for the State of New Mexico." (Doc. 1 at 4.)

Count 10: Serna brings a civil RICO claim against Defendant Paul Becht, deceased, pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, 1342, as well as invoking § 3571; and state predicate offenses pursuant to NMSA §§ 30-16-6, 30-24-1, 30-24-3.1, 30-41-1, and 30-41-2. Becht is sued "as an individual in his capacity as an agent for the State of New Mexico." (Doc. 1 at 4.)

Count 11: Serna brings a civil RICO claim against Carl Calvert pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371 and 1503; state predicate offenses pursuant to NMSA §§ 30-16-6, 30-16-9, 30-24-3.1, 30-41-1, and 30-41-2; and a violation NMRA Rule 16-404(B). Calvert is sued in his individual and official capacities.

Count 12: Serna brings a civil RICO claim against Defendant John Wells pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 2071, as well as an allegation of obstruction of justice by tampering with a witness, victim, or information, in violation of 18 U.S.C. § 1512; state predicate offenses pursuant to NMSA §§ 30-16-6, 30-16-9, and 30-51-4; and a violation of NMRA Rule 16-404(B). Wells is sued in his individual and official capacities.

Count 13: Serna brings a civil RICO claim against Judge Zamora pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 1001, 1621, and 1623; state predicate offenses pursuant to NMSA §§ 30-16-6, 30-16-9, 30-41-1, and 30-41-2; and what I construe to be violations of NMRA Rules 21-100, 21-201, 21-202, 21-208, 21-209; and Rule 21-

300. Additionally, Serna brings a claim against Judge Zamora for conspiracy to deprive Serna of her civil rights pursuant to 42 U.S.C. § 1983. Judge Zamora is sued in her individual and official capacities.

Count 14: Serna brings a civil RICO claim against Rodriguez pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371 and 1512, and a state predicate offense pursuant to NMSA § 30-16-9. Rodriguez is sued in her individual and official capacities.

Count 15: Serna brings a civil RICO claim against Pepin pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 1512, and a state predicate offense pursuant to NMSA § 30-16-9. Pepin is sued in his individual and official capacities.

Count 16: Serna brings a civil RICO claim against Moya pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 1512, and state predicate offenses pursuant to NMSA §§ 30-16-9, 30-41-1, and 30-41-2. Moya is sued in his individual and official capacities.

Count 17: Serna brings a civil RICO claim against Garcia pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 1001 and 1503, and state predicate offenses pursuant to NMSA §§ 30-16-6, 30-16-9, 30-24-1, 30-24-3.1, 30-41-1, and 30-41-2. Garcia is sued in her individual and official capacities.

Count 18: Serna brings a civil RICO claim against Mayer pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 1512, and state predicate offenses pursuant to NMSA §§ 30-16-9, 30-41-1, and 30-42-2. Mayer is sued in her individual and official capacities.

Count 19: Serna brings a civil RICO claim against Unthank pursuant to 18 U.S.C. § 1964, and alleges a predicate offense pursuant to 18 U.S.C. § 371 and state predicate offense pursuant to NMSA § 30-16-6. Unthank is sued in his individual and official capacities.

Count 20: Serna brings a civil RICO claim against Murillo pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, and 2071, and state predicate offenses pursuant to NMSA §§ 30-16-6 and 30-16-9. Murillo is sued in her individual and official capacities.

Count 21: Serna brings a civil RICO claim against Galanter pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, 1037, and 1038. Galanter is sued in her individual and official capacities.

Count 22: Serna brings a civil RICO claim against Roybal pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 371, 1001, 1028, 1038, and 2071, and state predicate offenses pursuant to NMSA §§ 30-16-6 and 30-16-9. Roybal is sued in her individual and official capacities.

Count 23: Serna brings a general claim for injunctive relief pursuant to 42 U.S.C. § 1983 and 5 C.F.R. § 2635.101(b)(14).

Count 24: Serna brings a civil RICO claim against Judge Nash pursuant to 18 U.S.C. § 1964, and alleges predicate offenses pursuant to 18 U.S.C. §§ 242, 371, 1001, 1341, and 1512, as well as a claim of fraud by wire, radio, or television in violation of 18 U.S.C. § 1343 and a claim for bribery of public officials and witnesses in violation of 18 U.S.C. § 201. Judge Nash is sued in her individual and official capacities.

In Count 25, Serna attempts to add counsel for the Judicial Defendants as a party-defendant to this case and bring a civil RICO action pursuant to 18 U.S.C. § 1964 for violating

18 U.S.C. § 1001 and for destruction, alteration, or falsification of records in Federal investigations and bankruptcy, in violation of 18 U.S.C. § 1519, and also brings a claim for deprivation of rights under 42 U.S.C. § 1983.

Count 26: Serna brings a claim for defamation and a claim for gender-based discrimination against CID.

**MOTIONS TO AMEND**

Motions to amend, before a scheduling order is entered, are governed by Federal Rule of Civil Procedure 15(a). Rule 15 contemplates two kinds of pretrial amendments: amendments as a matter of course, which may be made only once and only within 21 days of serving the original pleading or within 21 days after service of a responsive pleading or motion; and other amendments, which require the opposing party's written consent or leave of court. "The court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). A court may refuse to grant leave to amend when the opposing party shows undue delay, undue prejudice, bad faith or dilatory motive, failure to cure deficiencies by previously granted amendments, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'rs Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court clarified this standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). While the *Twombly/Iqbal* standard does not require significantly heightened fact-

pleading in a complaint, it is more than a minimal change from prior jurisprudence. *Id.* at 1191. Under this standard, to withstand a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "to state a claim for relief that is plausible on its face." *Id.* at 1190 (quoting *Twombly*, 550 U.S. at 670). A court must first identify those allegations in the complaint that are not entitled to the assumption of truth. *Id.* Thus, allegations which are legal conclusions, bare assertions, conclusory statements or "'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* at 1191 (quoting *Twombly*, 550 U.S. at 555). The court must then determine "whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* In determining whether a complaint states a plausible claim for relief, the court will consider the nature and specificity of the allegations based on the claims asserted in the case. *Id.*

Serna filed eight documents, other than her original complaint, that—in part—add claims and/or parties. (Docs. 7, 8, 25, 47, 61, 87, 93, 94.) None of these filings are titled as motions to amend the complaint, but that is nonetheless how they function.

Serna filed the Complaint in this matter on January 9, 2017. (Doc. 1.) On January 10, she returned to the Clerk's Office and filed two additional pleadings: Document 7 is labeled in CM/ECF as "APPENDIX/SUPPELMENT re 1 Complaint, missing pages to complaint before signature page by Emma Serna"; and Document 8 is titled "Exhibits to Complaint" and entered on CM/ECF as "EXHIBITS re 1 Complaint, by Emma Serna." Both documents are date and time stamped for the afternoon of January 10.

It appears that Document 7 is a continuation of the Complaint and was inadvertently omitted by Serna. In light of Serna's status as a pro se litigant, I will treat Document 7 as a continuation of or appendix to the Complaint, rather than as an amendment thereto. Additionally, it appears that Document 8 contains supporting documentation that should have been appended

to the Complaint, and was inadvertently omitted. Again, under the circumstances, I assume that Document 8 is an appendix to the Complaint and not an amendment thereto.

Should the Court view the matter differently, the result is the same: Serna is still allowed, as a matter of course, 21 days from the date of filing to amend her Complaint pursuant to Rule 15(a)(1)(A).

Whether Documents 7 and 8 are considered amendments or not is immaterial to the analysis of the other filings in this matter.

On February 9, 2017, Serna filed a document entitled "Amendment to the Defendants List" and labeled on CM/ECF as "SUPPLEMENT re 1 Complaint by Emma Serna." (Doc. 25.) This document purported to add Judge Nash as a party-defendant in her individual and official capacity. This document specifically amends the parties and the counts brought in this case and constitutes an "amendment" for purposes of Rule 15. Document 25 does not qualify as an amendment as a matter of course under Rule 15(a)(1) because it was filed more than 21 days after the original complaint and was not filed in response to a responsive pleading or qualifying motion under Rule 12. The only avenue for Serna to meaningfully effect this amendment is through Rule 15(a)(2), which requires leave of court. Serna did not apply for leave of court or concurrence of the parties prior to filing Document 25. Nonetheless, I will consider Document 25 under the standard discussed above.

Serna purports to bring claims against Judge Nash in her individual and official capacities. Serna alleges that from approximately May through August 2014, she presented to Judge Nash her problem: that the presiding judge in her state case would not sign an order granting her summary judgment, which she believed—and continues to believe—was mandated by the New Mexico Supreme Court. Judge Nash was not sympathetic. On February 3, 2017,

Judge Nash sent out a letter to the parties in the state action indicating that she would have a judge appointed by the New Mexico Supreme Court assigned to hear the case because all of the Judges of the Second Judicial District Court have recused or been excused. (Doc. 25 at 4-5.) According to Serna, the underlying state actions are closed and Judge Nash is "breaking all the rules, and trying to force [the state litigants] to reopen a case, that has Been filled with corruption." (*Id.* at 1-2.) Based on this, and Serna's unsupported allegation that Judge Nash is biased against her, Serna brings a cause of action against Judge Nash for civil RICO violations predicated on 18 U.S.C. §§ 242, 371, and 1000. (*Id.* at 2.)

"To successfully state a RICO claim, a plaintiff must allege four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (internal quotation and citation omitted). Racketeering activity is "any act in violation of specified state and federal crimes, including wire fraud, bank fraud, and fraud in the sale of securities." *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1543 (10th Cir. 1993). The specified crimes are found at 18 U.S.C. § 1961(1). To satisfy RICO's pattern requirement, a plaintiff must allege that the defendants committed two or more predicate acts and that the predicate acts themselves amount to or constitute a threat of continuing racketeering activity. *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (quotation and emphasis omitted).

Sections 242, 371, and 1000 are not specifically enumerated in § 1961. However, § 1961(1)(A) states that "racketeering activity" includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or [chemical listed in the Controlled Substances Act], which is chargeable under State law" and a felony. The activities at issue in this case are bribery and extortion. Under New Mexico law, extortion "consists of the communication or transmission of any threat to

another by any means whatsoever with intent thereby to wrongfully obtain anything of value or to wrongfully compel the person threatened to do or refrain from doing any act against his will." NMSA § 30-16-9 (2017). New Mexico law also defines bribery by a public officer or public employee as follows: "any public officer or public employee soliciting or accepting, directly or indirectly, anything of value, with intent to have his decision or action on any question, matter, cause, proceeding or appointment influenced thereby, and which by law is pending or might be brought before him in his official capacity." NMSA § 30-24-2 (2017).

Serna did not allege facts sufficient to state a case against Judge Nash for bribery or extortion. Serna makes the bald allegation that Judge Nash "wants to commit fraud by having an outside judge take the blame for any changes that she wants to make to the [arbitration] award, and more violations of the law transpire." (Doc. 25 at 2.) Serna presents legal conclusions and baseless allegations; not factual allegations that are entitled to a presumption of truth. As such, I recommend that the Court deny the motion to amend as to Judge Nash because it fails to state a claim upon which relief can be granted and is, therefore, frivolous.

Even if the Court does not deny the motion to amend for failing to state a claim, the claim against Judge Nash still cannot proceed because Judge Nash is protected by Eleventh Amendment immunity for the official capacity claims and judicial immunity for the individual capacity claims.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted). The Eleventh Amendment bars suits against a State unless the State has waived immunity or Congress has exercised its authority under § 5 of the Fourteenth Amendment to

abrogate that immunity. *Id.* at 67 (citing *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion)); *see also Ross v. Bd. of Reg. of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010). There is one other exception to Eleventh Amendment immunity: immunity is inapplicable if the plaintiff alleges ongoing violations of federal law and seeks only prospective relief. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123 (1908); *see also Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012).

"Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). The Judicial Defendants, including Judge Nash, have elsewhere raised Eleventh Amendment immunity for the official capacity claims. (*See, e.g.*, Doc. 33 at 6.) Judge Nash is a judge for the Second Judicial District Court for the State of New Mexico and is a state official. Congress has not specifically abrogated Eleventh Amendment immunity for suits relating to RICO allegations. Additionally, neither Judge Nash nor the State of New Mexico have consented to be sued in federal court for alleged RICO violations. *See* NMSA § 41-4-4(F) (declining to waive Eleventh Amendment immunity for suit in federal court). Additionally, Serna seeks retroactive relief, that is, damages, for Judge Nash's alleged misconduct. Therefore, the *Ex parte Young* exception does not apply.

Because Judge Nash is protected by Eleventh Amendment immunity as it relates to the official capacity claims against her, the Court does not have subject matter jurisdiction to hear those claims. I recommend that the Court deny the motion to amend as to all official capacity claims against Judge Nash because those claims would be subject to dismissal pursuant to Rule 12(b)(1) and are, therefore, frivolous.

"Judicial immunity applies only to personal capacity claims." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously or corruptly"). The only circumstances under which a judge is not immune are a) nonjudicial actions and b) when the judge acts "in the complete absence of all jurisdiction." *Id.* at 11-12. As to the second exception, "a judge does not act in the clear absence of all jurisdiction even if the action [s]he took was in error, done maliciously, or was in excess of [her] authority." *Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009) (citing *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000)). A judge only acts with a complete absence of all jurisdiction when the judge clearly lacks subject matter jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356-57 n.7 (1978).

The exceptions do not apply here. Serna's only complaints against Judge Nash surround her actions in her capacity as a judge, that is, her judicial actions. Additionally, there is no allegation—nor could there be—that Judge Nash acted without authority. The mere existence of a new federal case, not a case that is removed to federal court, does not divest the state court of jurisdiction over the underlying action. Because Judge Nash would enjoy judicial immunity for the individual capacity claims, I recommend that the Court deny the motion to amend because it fails to state a claim for relief and would not survive a motion to dismiss pursuant to Rule 12(b)(6).

On February 15, 2017, Serna filed a document entitled "Supplemental to the Defendants" and labeled on CM/ECF as "SECOND SUPPLEMENT re 1 Complaint by Emma Serna." (Doc. 47.) This document purported to add Wells and counsel for the Judicial Defendants as parties-defendant to this matter. This document specifically amends the parties and the counts brought in this case and constitutes an "amendment" for purposes of Rule 15. Document 47 does not qualify as an amendment as a matter of course under Rule 15(a)(1) because it was filed more than 21 days after the original complaint and was not filed in response to a responsive pleading or qualifying motion under Rule 12. The only avenue for Serna to meaningfully effect this amendment is through Rule 15(a)(2), which requires leave of court. Serna did not apply for leave of court or concurrence of the parties prior to filing Document 47. Nonetheless, I will consider Document 47 under the standard articulated above.

As to Defendant Wells, I note that Serna did, in fact, address Wells in the original Complaint, but appears to have inadvertently left him out of the list of Defendants. I find that this is a clerical correction and not a true amendment and thus recommend that the Court incorporate Document 47 into the Complaint, as it relates to Defendant Wells.

However, Serna also seeks to add counsel for the Judicial Defendants as a party-defendant to this matter, in his individual and official capacities. Serna does not include any factual allegations, whatsoever, against counsel, except that he is representing the Judicial Defendants in this matter. (*See* Doc. 47.)

Counsel works for the New Mexico Attorney General. Any claim against him in his official capacity constitutes a suit against the State of New Mexico and is barred by the Eleventh Amendment. As such, I recommend that the Court deny the motion to dismiss as to the official

capacity claims either because the Court lacks subject matter jurisdiction of the claims or because Serna failed to alleged facts sufficient to state a claim.

As to the individual capacity claims, Serna apparently brings suit pursuant to 42 U.S.C. § 1983. To succeed on a suit under § 1983, a plaintiff must allege, among other things, that the state official was personally involved in a constitutional violation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). Serna does not allege a constitutional violation in which counsel personally participated. Indeed, simply representing Judicial Defendants, in the normal course and scope of counsel's employment, does not constitute personal involvement in any underlying constitutional violation. I therefore recommend that the Court deny the motion to dismiss as to the individual capacity claims because they are frivolous, fail to state a claim for relief, and would not survive a motion to dismiss pursuant to Rule 12(b)(6).

On February 10, 2017, the CID Defendants filed their motion to dismiss. (Doc. 37.) On February 24, 2017, Serna filed "Plaintiff's Objection to Dismissal of Complaint Against C.I.D. Defendants." (Doc. 61.) In addition to other things in her objection/response, Serna included a statement that she has "suffered defamation of name" as a result of the CID Defendants' conduct. (*Id.* at 3.) Because Serna did not include a claim for defamation in her original complaint, I construe this portion of her objection/response as a motion to amend the Complaint as to the CID Defendants.

While it appears at first blush that the amendment may be timely under Rule 15(a)(1), the Rule only contemplates one amendment as a matter of course, not an amendment as to each defendant. As such I recommend that the Court analyze the proposed amendment under the framework of Rule 15(a)(2).

The proposed amendment to add a claim for defamation should be denied for two reasons: first, Serna fails to include factual allegations sufficient to make out a claim for defamation; and second, the CID Defendants enjoy Eleventh Amendment immunity for such a claim, rendering the Court devoid of subject matter jurisdiction for that claim.

Under New Mexico law, the elements of defamation include: "(1) a publication by the defendant, (2) of an asserted fact, (3) which is defamatory, (4) communicated to a third person, (5) of and concerning the plaintiff, (6) and proximately causing injury to the plaintiff." *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1144 (10th Cir. 2000). Serna does not allege that the CID Defendants made any publication or communication to third parties. Indeed, Serna merely alleges that the CID Defendants accepted a complaint from the Websters in 2016 and did some sort of investigation. (Doc. 61 at 2-3.) Based on the facts presented, Serna failed to state a claim for defamation.

Additionally, the CID Defendants are all employees of the New Mexico Construction Industries Division, an arm of the State of New Mexico. Serna does not allege that any of the CID Defendants acted outside the scope of their authority or acted in anything other than official capacity. Because the State of New Mexico has not waived immunity for defamation claims, Congress has not expressly abrogated immunity for defamation claims, and Serna does not seek prospective relief, the CID Defendants are protected by Eleventh Amendment immunity and the Court lacks subject matter jurisdiction to hear a defamation claim against them in their official capacities. I recommend that the Court deny the motion to amend on this basis.

To the extent that the Court wishes to read a § 1983 claim into the claim for defamation, the Court should also deny the motion to amend to the extent it brings such a claim because

Serna failed to allege any kind of constitutional violation and thus failed to state a claim under § 1983.

In her filing of March 17, 2017, entitled "The Defendants Fair Notice of What the Claim is and Grounds Upon Which it Rests," Serna raises a new allegation against CID: Serna claims that CID discriminated against her and her company because the company is owned by a woman. (Doc. 87.) The original complaint does not address any allegation of gender-based discrimination. Because Serna is not an employee of CID, this cannot be considered a Title VII claim under 42 U.S.C. § 2000 et seq. Additionally, because Serna does not bring this claim against any individual actor, she could not be seeking relief pursuant to 42 U.S.C. § 1983. Therefore, I consider this claim as an equal protection claim under the Fourteenth Amendment and I construe this as another motion to amend to the Complaint and add claims against CID.

At no point in its pleadings did CID raise the specter of Eleventh Amendment immunity, however, as noted above, the Eleventh Amendment presents a limit on federal subject matter jurisdiction. CID is an "arm of the state" and enjoys the same immunity as the State of New Mexico. CID receives its funding from the State of New Mexico, is governed by the State, and a money judgment against it would be paid by the state treasury. *See Watson v. U. of Utah Med. Ctr.*, 75 F.3d 569, 574-75 (10th Cir. 1996). Congress has not specifically abrogated the states' immunity for suits like this, New Mexico has not waived immunity, and because Serna seeks money damages, the *Ex Parte Young* exception is not applicable. Accordingly, CID is immune from suit on this basis. I recommend that the Court deny the motion to amend for lack of subject matter jurisdiction.

Even if the Court concludes that CID is not immune, the Court should deny the motion to amend pursuant to Rule 12(b)(6) because Serna fails to allege facts sufficient to state a claim.

The only allegation is that CID opened an investigation against Serna's company, based on a complaint. Serna then surmises that CID opened the investigation as a matter of gender-based discrimination because the company is owned by a woman. There are no facts to support such a claim and Serna has failed to state a claim upon which relief can be granted.

In her "Reply to Motion for Substitution of Simon's Counsel," filed on March 23, 2017, Serna attempted to raise additional allegations against Simon under the New Mexico Rules of Professional Conduct. (Doc. 93.) Aside from the fact that Serna includes no specific facts to support her claim that Simon violated NMRA Rule 16-804(C), (D), and (H), counsel is not a proper defendant in this case, as simply representing a client does not make him a co-conspirator, and this Court is not the appropriate avenue by which to pursue complaints against attorneys for their professional conduct. Therefore, I recommend that the Court deny the motion to amend for failure to state claim upon which relief can be granted.

In a document entitled "Defendant Nash in Violation of Jurisdiction and Authority and RICO Act," filed March 23, 2017, Serna attempts to add additional predicate violations for the civil RICO claim against Judge Nash. (Doc. 94.) For the same reasons discussed above, as it relates to Document 25, the Court should deny the motion to amend on the basis of Eleventh Amendment immunity for the official capacity claims and judicial immunity for the individual capacity claims, and conclude that amendment would be futile as the proposed new allegations would be subject to dismissal under Rule 12(b)(1) and 12(b)(6).

## MOTIONS FOR DEFAULT JUDGMENT

Serna filed several motions explicitly seeking default judgment of various defendants or all of the defendants, as well as other pleadings that requested default judgment. (*See* Docs. 26, 27, 28, 29, 30, 31, 32, 66, 77, 92, 115.) Federal Rule of Civil Procedure 55 governs default

judgment and prescribes a two-step press. First, a party must seek and, if appropriate based on the record, the Clerk of Court must enter default; and then, second, the party must move for default judgment. In this case, Serna did not seek default against any defendant and the Clerk has not entered default against any defendant. Accordingly, Serna cannot obtain default judgment. Additionally, many of the Defendants did, in fact, file responsive pleadings, often in the form of a motion to dismiss. Therefore, I recommend that the Court deny Serna's motions for default judgment.

## MOTIONS TO DISMISS

There are five pending motions to dismiss brought under various provisions of Rule 12. Should the Court adopt my recommendations as to the proposed motions to amend, some of the motions to dismiss could be denied as moot. Nonetheless, I proceed to analyze the motions to dismiss and all other remaining motions as though all of Serna's amended allegations are properly before the Court. Rather than analyzing the legal basis for each motion to dismiss individually, I address the basic tenets of a motion to dismiss under all relevant grounds asserted in the Rule 12(b) motions, and then address the motions themselves.

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 (1988). Rule 12(b)(1) allows a party to raise the defense of the court's lack of jurisdiction over the subject matter by motion. FED. R. CIV. P. 12(b)(1). The Tenth Circuit has held that motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the

sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When confronted with a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion: the court must consider the complaint's allegations to be true. *See id.* However, when resolving an attack on the asserted jurisdictional facts themselves, a district court may not presume the truthfulness of those allegations and enjoys wide discretion to resolve disputed jurisdictional facts. *See Hill v. Vanderbilt Capital Advisors, LLC*, No. CIV 10-0133 JB/KBM, 2011 WL 6013025, at *8 (D.N.M. Sept. 30, 2011) (unpublished).

When making a Rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In those instances, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a Rule 56 motion for summary judgment. *See Holt*, 46 F.3d at 1003 (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court determines that jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion under either Rule 12(b)(6) or Rule 56. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" *Davis ex rel.*

*Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002)).

Where a defendant raises a timely challenge to personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction. *See Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991). To defeat a defendant's motion to dismiss pursuant to Rule 12(b)(2), a plaintiff is required only to make a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008) (citation omitted).

For the purpose of determining whether a plaintiff has made a prime facie showing of personal jurisdiction, the court must accept as true all factual allegations in the complaint. *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008); *Dudnikov*, 514 F.3d at 1070. "Similarly, any factual disputes in the parties' affidavits must be resolved in the plaintiffs' favor." *Dudnikov*, 514 F.3d at 1070 (citing *FDIC v. Oaklawn Apts.*, 959 F.2d 170, 174 (10th Cir. 1992)). However, "[t]he plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res. Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citation omitted). "Domicile in the state is alone sufficient" to establish personal jurisdiction. *Milliken v. Meyer*, 311 U.S. 457, 462 (1940).

Pursuant to Rules 12(b)(4) and 12(b)(5), a "defendant may object to plaintiff's failure to comply with the procedural requirements for proper service set forth in or incorporated by Rule 4." *Richardson v. Alliance Tire & Rubber Co.*, 158 F.R.D. 475, 477 (D. Kan. 1994) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1353 (2d ed. 1990)). "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the method of its delivery." *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871

F. Supp. 1331, 1349 (D. Kan. 1994) (citation omitted). "A Rule 12 (b)(5) motion . . . challenges the mode or lack of delivery of a summons and complaint." *Id.* at 1350 (citation omitted).

"Motions under Federal Rules 12(b)(4) and 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the district court a course of action—quashing the process without dismissing the action—other than simply dismissing the case when the defendant's defense or objection is sustained." 5 C. Wright & A. Miller, Federal Practice and Procedure § 1354 (3d ed. 2004). "Effectuation of service is a precondition to suit." *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998). The plaintiff has the burden of establishing the validity of service. *See Oaklawn Apts.*, 959 at 174. Where plaintiff does not meet this burden, a court may dismiss for failure to properly serve. *See Lasky v. Lansford*, 76 F. App'x 240, 241 (10th Cir. 2003) (unpublished).

"Technical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice." *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994); *see U.S.A. Nutrasource, Inc. v. CNA Ins. Co.*, 140 F. Supp. 2d 1049, 1052-53 (N.D. Cal. 2001) ("Dismissals for defects in the form of summons are generally disfavored. Such defects are considered 'technical' and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice.") (citation omitted).

"[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." *Pell v. Azar Nut Co., Inc.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983) (citation omitted); *see Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) ("Where service of process is insufficient, the courts have broad discretion to dismiss the action or to retain the case but quash service that has been made on a defendant . . . even though service will ordinarily be quashed and the action

preserved where there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly." (quotation and citation omitted)). In addition, the Court has discretion to dismiss the action if it appears unlikely that proper service can or will be instituted. *See Pell*, 711 F.2d at 950 n.2.

Under Federal Rule of Civil Procedure 12(b)(6), the Court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 667 (quoting *Twombly*, 550 U.S. at 570). When considering a motion to dismiss under Rule 12(b)(6), the Court considers "the complaint as a whole, along with the documents incorporated by reference into the complaint" and construes all well-pleaded allegations in the light most favorable to the plaintiff. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted). "Well-pled" means that the allegations are "plausible, non-conclusory, and non-speculative." *Dudnikov*, 514 F.3d at 1070. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Mocek v. City of Albuquerque*, 813 F.3d 912, 921 (10th Cir. 2015) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)).

A court may resolve a motion to dismiss under Rule 12(b)(6) on the basis of an affirmative defense, such as the statute of limitations or immunity, when the facts establishing the defense are apparent on the face of the complaint. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

Crowley was the first to file a motion to dismiss and argued for dismissal pursuant to Rule 12(b)(1), (b)(4), (b)(5), and (b)(6) in his two-page motion. (Doc. 23.) Serna's response to

Crowley's motion to dismiss was simply to assert that Crowley had defaulted by failing to file an "answer." (Doc. 26.)

Crowley's argument under Rules 12(b)(1) and (b)(6) is undeveloped and unsupported. He summarily states that "Plaintiff's Complaint is a legal nullity, and thus raises the issue of standing pursuant to Rule 12(b)(1)Fed.R.Civ.P.(2016), because an [sic] limited liability company cannot represent itself *pro se* pursuant to D.N.M. LR-CV 83.7 (2016)." While I agree that the business entity cannot represent itself, that does not nullify the claims brought by Serna personally, and certainly does not divest the Court of subject matter jurisdiction, given that Serna brought federal claims. While I agree with Crowley that Serna did not state a claim against him, a bare bones and summary argument that "Plaintiff's Complaint fails to state a claim upon which relief can be granted . . . [and] is so patently meritless" is ordinarily insufficient. However, in light of the other motions to dismiss, I agree with Crowley that Serna's complaint fails to state a claim upon which relief can be granted. None of these allegations state any claim for relief against Crowley, and again reflect a deep misunderstanding by Serna about what transpired in state court. I recommend that the Court grant Crowley's motion to dismiss pursuant to 12(b)(6) and dismiss the claims against him. Because I agree with Crowley on his argument under Rule 12(b)(6), it is not necessary to address the service issues under Rules 12(b)(4) and (b)(5) because the remedy under those Rules would be to quash service, rather than dismiss the case.

The Judicial Defendants, excluding Judge Nash, filed a motion to dismiss on February 9, 2017 (Doc. 33), that was later joined by Judge Nash (Doc. 40). The Judicial Defendants argue that they are entitled to dismissal under Rule 12(b)(1) for the official capacity claims, by reason of "sovereign immunity" under the Eleventh Amendment, and Rule 12(b)(6) for the individual

capacity claims, by reason of judicial immunity. Serna responded to the motion and agreed that dismissal of the State of New Mexico was appropriate. (Doc. 54 at 7.)

As discussed above, the Eleventh Amendment protects the judges (Judge Zamora, Judge Brickhouse, Judge Butkus, Judge Malott, and Judge Nash) from suit in their official capacities. Eleventh Amendment immunity also extends to the other Judicial Defendants (Moya, Mayer, Garcia, Rodriguez, Pepin, Ortega, Noel, Molina, and Walker) in their official capacities, as these Defendants are employees of the Judicial Branch of the State of New Mexico acting within the course and scope of their official duties. *See generally Hunt v. Cent. Consol Sch. Dist.*, 951 F. Supp. 2d 1136, 1192 (D.N.M. 2013).

Also as discussed above, the judges are immune from suit in their individual capacities pursuant to judicial immunity. Judicial immunity extends to remaining Judicial Defendants because the doctrine "applies not only to judges but also to any judicial officer who acts to either 'resolve disputes between parties or . . . authoritatively adjudicate private rights.'" *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (quoting *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993)) (some alterations omitted). The Tenth Circuit explicitly stated that court clerks, tasked with filing documents, assisting the judge, and otherwise performing "judicial acts," fall within the ambit of protected judicial officers. *Id.*

Because all of the Judicial Defendants, including Judge Nash, are protected by Eleventh Amendment immunity in their official capacities and judicial immunity in their individual capacities, I recommend that the Court grant the motions to dismiss.

AAA Arbitrator Calvert also filed a motion to dismiss pursuant to Rules 12(b)(1), (b)(2), (b)(4), (b)(5), and (b)(6). (Doc. 34.) Calvert argues under Rule 12(b)(6) that the claims against him should be dismissed as untimely, barred by arbitral immunity, and because Serna lacks

standing. Strangely, Calvert goes on to argue that because Serna fails to state a cognizable claim, even though she clearly alleges federal claims, that the Court somehow lacks subject matter jurisdiction under Rule 12(b)(1). (*Id.* at 2-3.) Like Crowley, Calvert also asserts that the summons was insufficient under Rule 12(b)(4) and that service of the summons was insufficient under Rule 12(b)(5). Because service failed, contends Calvert, the Court lacks personal jurisdiction over him and the claims against him should be dismissed pursuant to Rule 12(b)(2).

Calvert's arguments under Rules 12(b)(1) and (b)(2) are certainly creative, but lack any colorable basis in law. The Court does not lose subject matter jurisdiction simply because a plaintiff attempted to and failed to state a federal cause of action. The argument is circular, convoluted, and a red-herring. Similarly, as to Calvert's claim that the Court lacks personal jurisdiction, Calvert is a New Mexico licensed attorney who lives and works in the State of New Mexico, which encompasses the external territorial bounds of the District of New Mexico. Calvert did not provide any authority for his proposition that a failure to effect proper service divests the court of personal jurisdiction over a resident defendant. This argument, too, is a red-herring.

Calvert's creative arguments notwithstanding, I agree that Serna failed to state a claim against him upon which relief can be granted. To the extent that Serna brings claims against Calvert as a result of his actions as an AAA Arbitrator, those claims are barred by arbitral immunity. To the extent that Serna brings other claims against Calvert, she failed to allege facts sufficient to state a claim for civil RICO violations.

Arbitral immunity is not absolute in the Tenth Circuit. *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007). "The key question . . . is whether the claim at issue arises out of a decisional act." *Id.* "In other words, does the claim, regardless of

its nominal title, effectively seek to challenge the decisional act of an arbitrator or arbitration panel? If so, then the doctrine of arbitral immunity should apply." *Id.*

Here, Calvert dismissed the AAA arbitration for lack of jurisdiction and this, in itself, appears to have raised Serna's ire. Determining that the case was improperly brought to the AAA is a quintessential decisional act. I agree that Calvert should be protected by arbitral immunity and recommend that the claims be dismissed on that basis.

To the extent that Serna brought any additional claims against Calvert, she did not allege any facts sufficient to state a claim against Calvert. Indeed, in response to his motion to dismiss, Serna failed to address the legal arguments and instead essentially called Calvert and his attorney liars. (Doc. 46.) Because Serna failed to advance any factual basis whatsoever against Calvert, I recommend that the Court dismiss any remaining claims for failure to state a claim pursuant to Rule 12(b)(6).

Because I agree with Calvert that Serna's claims against him should be dismissed pursuant to Rule 12(b)(6), it is not necessary to address the service and summons issues under Rules 12(b)(4) and (b)(5).

The CID Defendants also filed a motion to dismiss pursuant to Rule 12(b)(6). (Doc. 36.) They argue, simply, that Serna failed to allege any facts sufficient to state a predicate offense by any of the CID Defendants that could sustain a claim for civil RICO. In response to this motion to dismiss, Serna baldly alleges that Judge Brickhouse was ghost-writing letters and correspondence for CID. (Doc. 61.) Also in the response, Serna brought a new claim for defamation against the CID Defendants. Like many of Serna's allegations, she included no factual basis for these conclusions. In an unauthorized surreply, Serna brought a new claim for

gender-based discrimination against CID. (Doc. 87.) This, too, is unsupported by any factual contention whatsoever except that Serna is a woman and she owns the construction company.

The only allegation against the CID Defendants is that they accepted and investigated the Websters' complaint and ultimately told Serna that they could not resolve the issues. It does not appear that the CID Defendants took any adverse action against Serna. Accordingly, Serna failed to state a predicate offense to support a civil RICO claim, failed to make out a claim for defamation, and failed to state any claim upon which relief can be granted. I recommend that the Court grant the CID Defendants' motion to dismiss.

Additionally, although Wells did not file a motion to dismiss and indeed filed only a bare-bones Answer to the complaint on April 26, 2017 (Doc. 112), I recommend that the Court sua sponte address the issue of arbitral immunity as to Wells. Wells acted as a court-annexed arbitrator in the underlying litigation. Wells was appointed by the Second Judicial District Court to hear the matter. He did exactly that. Serna refused to participate in the arbitration and is upset that an award was entered against her. All actions that Wells took constitute decisional acts and are protected by arbitral immunity. I recommend that the Court, after allowing Serna to respond to this PFRD, dismiss the claims against Wells as being futile, because no amount of amendment will adequately recharacterize his actions as arbitrator as anything other than decisional acts.

Finally, while the Websters have not yet filed an answer in this case, it appears that the claims against them suffer the same deficiencies. Serna failed to allege specific facts to make out a cause of action, and her baseless inferences that the Websters have effected some protracted, nefarious plot are insufficient to support her claims. Accordingly, I recommend that the Court order Serna to show cause, in writing, why her claims against the Websters should not be dismissed.

Simon moved for a more definite statement of the claims pursuant to Rule 12(e). (Doc. 38.) Specifically, Simon alleges that the Complaint is unintelligible as to the claims against him, and cites *Frazier v. Southeastern Pennsylvania Transportation Authority*, 868 F. Supp. 757, 763 (E.D.Pa. 1994). I agree that the Complaint is confusing and fails to provide sufficient information for Simon to respond to the allegations against him. As such, I recommend that the Court grant Simon's motion for more definite statement and order Serna to file an Amended Complaint as to Simon only within ten days from the date of entry of the Order adopting this PFRD.

**MOTIONS FOR INJUNCTIVE RELIEF**

Serna filed several motions seeking various forms of injunctive relief. Specifically, she requests leave to refile the mechanic's lien against the Websters that was expunged by Judge Brickhouse on January 12, 2017 (Doc. 11); seeks injunctive relief against Judge Brickhouse pursuant to 18 U.S.C. §§ 1033, 1034, and 1035, and seeks an order instructing Judge Brickhouse to stop engaging in actions that are detrimental to Serna's interests (Doc. 20); seeks an order directing the Bernalillo County Clerk's Office to "dismiss expungement of [the mechanic's] lien" pursuant to 40 U.S.C. § 270 and 18 U.S.C. §§ 1365 and 3613 (Doc. 21); seeks an injunction to prevent the state cases from going in front of a state judge selected by the New Mexico Supreme Court (Doc. 24); a Notice that Judge Nash is in violation of "U.S. Code § 3231 jurisdiction" and seeking an order to Judge Nash to cancel a hearing in the state case (Doc. 94); a second motion for an order "dismissing state district court's Expungement of the lien" filed against the Websters (Doc. 96); a request for an emergency temporary injunction to prohibit the state case from proceeding (Doc. 98); another motion to "overturn the rulings and orders that

[Judge] Nash is going to carry through during" a hearing in the state case a request to reprimand counsel for the Judicial Defendants for "refusing to vacate the hearing" (Doc. 104); and a motion to "dismiss" Judge Nash's April 18, 2017, Order and apparently attempting to bring additional claims against Judge Nash (Doc. 105).

The Anti-Injunction Act, 28 U.S.C. § 2283, resolves all of these matters. The Anti-Injunction Act "is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions" to the Act. *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630. The three exceptions are when an injunction is needed to protect or effectuate the judgments of the federal court, when the injunction is necessary in aid of the federal court's jurisdiction, and where injunction has been "expressly authorized by Acts of Congress." 28 U.S.C. § 2283; *Mitchum v. Foster*, 407 U.S. 225, 228 (1972). "[A] federal court does not have the inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 294 (1970).

Here, it is not "unmistakably clear" that the state proceedings interfere with a protected right or invade an area preempted by federal law. Even if they did, it would not matter. There is no judgment of the federal court that needs to be protected or effectuated. The federal court's jurisdiction does not require aid within the meaning of the statute. Specifically, no action in the underlying proceedings has impaired this Court's jurisdiction. *See generally Atlantic Coast*, 398 U.S. at 294-96. Finally, Serna did not identify and I have been unable to find any express authorization from Congress to interfere with the state proceedings in this matter.

Because the Anti-Injunction Act is clear and absolute, and none of the narrowly drawn exceptions apply, I recommend that the Court deny these motions.

**MOTION FOR SUBPOENA**

In her response to the CID Defendants' motion to dismiss, Serna included a request for a subpoena "of all bank statements, phone records, etc." for every Defendant. (Doc. 61 at 4.) Subpoenas are discovery devices. Discovery has not opened in this case and, if the Court adopts this PFRD, will not open. Because I have recommended that the Court grant the motions to dismiss and dismiss these claims, I further recommend that the Court deny Serna's exceptionally broad request for a subpoena of personal and private records.

**MOTIONS TO STRIKE AND FOR SURREPLY**

The Judicial Defendants filed a motion to strike (Doc. 84) Serna's unauthorized surreply to their motion to dismiss (Doc. 83 (entitled "Plaintiff's Reply in Further Support to Hear Complaint")). "The filing of a surreply requires leave of the Court." D.N.M.LR-Civ. 7.4(b). The decision to grant the filing of a surreply is within the Court's sound discretion. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998). Leave to file a surreply is appropriate when the Court relies on new materials or new arguments in a reply brief. *See id.* at 1165 (discussing surreplies in the summary judgment context). Leave to file a surreply should be granted even when there are no new legal arguments made in the reply, but new evidentiary materials are appended to the reply in support of arguments already made. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003).

In responding to the Judicial Defendants' motion to strike, Serna does request leave of court but does not contend that the Judicial Defendants made new legal arguments or attached new evidentiary materials. (Doc. 90.) The Judicial Defendants did not make new legal arguments

or present new evidence in their reply. There is no reason to grant leave to file a surreply in this instance. Therefore, I recommend that the Court grant the Judicial Defendants' motion to strike (Doc. 84), deny Serna's late request for leave to file a surreply (Doc. 90), and strike the impermissible surreply (Doc. 83).

## MOTIONS FOR SANCTIONS AND FILING RESTRICTIONS

Finally, the parties have brought several motions for sanctions and a motion for filing restrictions.

In her document entitled "Supplemental to Judicial Defendants Dismissal Answer" (Doc. 58), Serna alleges that counsel for the Judicial Defendants failed to divulge that he works for the New Mexico Attorney General's Office and thus made a misrepresentation. In an abundance of caution, I construe this as a motion for sanctions. Serna's statement is patently false. The signature block of the Judicial Defendants' motion to dismiss clearly identifies counsel's affiliation. (Doc. 34 at 24.) I recommend that the Court explicitly find that counsel did not engage in any wrongdoing or misrepresentation and deny the motion for sanctions.

In "Attorney for Judicial Defendants Made a False Statement to the Court" (Doc. 91), Serna again alleges that counsel for the Judicial Defendants has committed some form of malfeasance by using the incorrect caption on the case. I addressed this matter in a separate Order. To the extent that there is an unresolved request for sanctions, I recommend that the Court deny that request.

Finally, the Judicial Defendants moved for filing restrictions to be imposed on Serna. (Doc. 99.) As basis, the Judicial Defendants cite my February 23, 2017, Order granting the various motions to stay this action pending resolution of the dispositive motions. (Doc. 55.) Despite that Order, Serna continued filing voluminous documents with the Court. Serna

responded to the motion for filing restrictions and acknowledged the stay, but stated that she "has an obligation to report all violations that the defendants are committing." (Doc. 100.)

"The right of access to the courts is neither absolute nor unconditional and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." *In re Winslow*, 17 F.3d 314, 318 (10th Cir. 1994) (quotation and alteration omitted). "Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances." *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010). Orders restricting the ability of a litigant to file pleadings are appropriate where "(1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant must do to obtain permission to file . . . ; and (3) the litigant received notice and an opportunity to oppose the court's order before it is instituted." *Id.*

Since the stay was imposed in February 2017, Serna has filed over a dozen new documents detailing perceived slights and bringing claims that are grounded neither in fact nor in law. Her continued filing has hampered my ability to timely provide recommendations on the pending motions. Therefore, I recommend that the Court grant the motion for filing restrictions, limit Serna's response to that Order to objections on the nature of the restrictions, and institute the restrictions fifteen days after entry of the Order.

## CONCLUSION

I recommend that the Court: 1) deny all motions to amend; 2) deny all motions for default judgment; 3) grant all motions to dismiss as described herein; 4) order Serna to show cause why her claims against the Websters should not be dismissed; 5) grant Simon's motion for a more definite statement; 6) deny the motions for injunctive relief; 7) deny Serna's request for a subpoena; 8) grant the Judicial Defendants' motion to strike and deny Serna's motion for leave

to file a surreply; 9) deny Serna's motions for sanctions; 10) grant the Judicial Defendants' motion for filing restrictions and order Serna to show cause why restrictions should not be imposed; and 11) dismiss with prejudice any criminal charges Serna purports to bring.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

---

William P. Lynch

William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.