# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

EMMA SERNA d/b/a SERNA &
ASSOCIATES CONSTRUCTION CO., LLC,

      Plaintiff,

vs.                                        No. CIV 17-0020 JB/WPL

MARGETTE WEBSTER; DAVID WEBSTER;
STATE OF NEW MEXICO, U.S. Judicial
Court Division; CLAYTON CROWLEY;
ALEX CHISHOLM; CARL BUTKUS; CINDY
MOLINA; ALAN MALOTT; BEATRICE
BRICKHOUSE; BOBBY JO WALKER;
JAMES O'NEAL; ROBERT BOB SIMON;
ESTATE OF PAUL F. BECHT; CARL A.
CALVERT; JOEY MOYA; AMY MAYER;
GARCIA MADELIENE; ARTHUR PEPIN;
MONICA ZAMORA; CHERYL ORTEGA;
JOHN DOE #1; PAT MCMURRAY;
MARTHA MUTILLO; SALLY GALANTER;
NEW MEXICO CONSTRUCTION
INDUSTRIES DIVISION; ROBERT "MIKE"
UNTHANK; MARTIN ROMERO; AMANDA
ROYBAL; NAN NASH and JOHN WELLS,

      Defendants.

## MEMORANDUM OPINION AND ORDER ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion [sic] District Court's Hearing of January 12, 2017, filed January 12, 2017 (Doc. 11), which the Court construes as a request to refile a lien that the state district court expunged; (ii) the Plaintiff's Request Order for Injunctive Relief from Second Judicial District Court 18 U.S.C. § 1033, 1034, & 1035, filed February 2, 2017 (Doc. 20), which the Court construes as a motion for injunctive relief from the Second Judicial District Court, County of Bernalillo, for the State of New

Mexico; (iii) the Plaintiff's Request Order for U.S.C. 18 Dismissal of Expungement of Public Records, filed February 2, 2017 (Doc. 21), which the Court construes as a motion for an order directing the Bernalillo County Clerk to "dismiss the expungement" of a lien; (iv) Defendant Clayton Crowley's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(4), (b)(5), and (b)(6), filed on February 6, 2017; (v) Plaintiff's Proof to Support Need of Injunction, filed February 8, 2017 (Doc. 24), which the Court construes as a second motion for injunctive relief; (vi) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant Crowley, filed February 9, 2017 (Docs. 26, 27); (vii) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant Margette Webster, filed February 9, 2017 (Doc. 28); (viii) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant David Webster, filed February 9, 2017 (Doc. 29); (ix) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant Alex Chisholm, filed February 9, 2017 (Doc. 30); (x) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant Carl Calvert, filed February 9, 2017 (Doc. 31); (xi) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant Robert Simon, filed February 9, 2017 (Doc. 32); (xii) Defendants Judge Monica Zamora, Judge Beatrice Brickhouse, Judge Carl Butkus, Judge Alan Malott, Joey Moya, Amy Mayer, Madeline Garcia, Lynette Rodriguez[1], Arthur Pepin, Cheryl Ortega, James Noel, Cindy Molina, Bobby Jo Walker, and the State of New Mexico ("Judicial Defendants")'s Judicial Defendants' Motion to Dismiss Complaint, filed February 9, 2017 (Doc. 33); (xiii) Defendant Calvert's Motion of Carl A. Calvert to Dismiss Complaint, filed

---

[1] The Plaintiff specifically lists "predicate acts" that Rodriguez committed and describes Rodriguez as a "proximate cause" to the allegations in this case, but chose not to list Rodriguez in the caption of the complaint. See Complaint Pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(2), 28 U.S.C. [sic] 1331, 18 U.S.C. § 1964, 27 U.S.C. § 151, 18 U.S.C. § 1341 Compensatory Damages, Injunctive Relief, Quantum Damages, General Damages, and Punitive Damages White Collar Crime at 22, filed January 9, 2017 (Doc. 1)("Complaint"). Nonetheless, the Court assumes that Serna intends to bring a claim against Rodriguez and thus disposes of that claim herein.

February 9, 2017 (Doc. 34); (xiv) Defendants New Mexico Construction Industries Division ("CID"), Robert Unthank, Sally Galanter, Martha Murillo, Pat McMurray, Martin Romero, and Amanda Roybal ("CID Defendants")'s Joint Motion to Dismiss, filed February 10, 2017 (Doc. 36); (xv) Defendant Simon's Motion for More Definitive Statement, filed February 10, 2017 (Doc. 38); (xvi) Defendant Judge Nan Nash's Motion to Dismiss Complaint, filed February 10, 2017 (Doc. 40)[2]; (xvii) the Plaintiff's Motion to Have the Honorable Browning Hear All Dismissal Briefs, filed February 21, 2017 (Doc. 53), which the Court construes to be a motion for hearing; (xviii) the Plaintiff's Supplemental to Judicial Defendants Dismissal Answer, filed February 23, 2017 (Doc. 58), which the Court construes to be the Plaintiff's motion for sanctions against counsel for the Judicial Defendants for failing to disclose his employment status; (xix) the Plaintiff's Objection to Dismissal of Complaint Against C.I.D. Defendants, filed on February 24, 2017 (Doc. 61); (xx) Plaintiff's Motion for Entry of Judgment on Default Judgments as to all Defendants, filed March 1, 2017 (Doc. 66); (xxi) the Plaintiff's Proof of Service to Defaulted Defendants, filed March 9, 2017 (Doc. 77); (xxii) the Plaintiff's Reply in Further Support to Hear Complaint, filed March 14, 2017 (Doc. 83); (xxii) the Judicial Defendants' Motion to Strike Plaintiff's "Reply in Further Support to Hear Complaint," filed March 14, 2017 (Doc. 84); (xxiii) the Plaintiff's Completion of Plaintiff's Briefings and Request Entry of "Reply in Further Support to Hear Complaint," filed March 21, 2017 (Doc. 90); (xxiv) the Plaintiff's Attorney for Judicial Defendants Made a False Statement to the Court, filed March 21, 2017 (Doc. 91), which the Court construes to be Plaintiff's second motion for sanctions against counsel for the Judicial Defendants (Doc. 91); (xxv) the Plaintiff's Waiver of Service of Summons Has Been Mailed to the Websters, filed on March 23, 2017 (Doc. 92);

---

[2]For the remainder of this Memorandum Opinion and Order, the Court considers Judge Nash to be part of the Judicial Defendants.

(xxvi) the Plaintiff's Defendant Nash in Violation of Jurisdiction and Authority and RICO Act, filed  March 23, 2017 (Doc. 94), which the Court construes as the Plaintiff's third motion for injunctive relief; (xxvii) the Plaintiff's Request: Order for Dismissal of Expungement, of Mechanic's Lien, Filed by State District Court at County Clerks Office, filed April 3, 2017 (Doc. 96); (xxviii) the Plaintiff's Request Emergency Temporary Injunction on Second Judicial District State Court, Albuquerque, filed April 6, 2017 (Doc. 98); (xxix) the Judicial Defendants' Motion to Impose Filing Restrictions on Plaintiff, filed April 6, 2017 (Doc. 99); (xxx) the Plaintiff's Complaint to Judge Browning: Judge Nash in Noncompliance of Lawsuit in Federal Court and Holding an Arbitration Hearing to Change a 2 Yr. Old Award, filed April 17, 2017 (Doc. 104), which the Court construes as the Plaintiff's fourth motion for injunctive relief; (xxxi) the Plaintiff's Judge Nash's Ruling in State District Court Without Jurisdiction and Authority, filed April 19, 2017 (Doc. 105), which the Court construes as another motion for injunctive relief; (xxxii) the Plaintiff's Motion for Entry of Default and Default Judgment as to Defendant John Wells, filed May 3, 2017 (Doc. 115); (xxxiii) the Plaintiff's motions to amend complaint, filed January 10, February 9, February 15, February 24, March 17, and March 23, 2017 (Docs. 7, 8, 25, 47, 61, 87, 93, 94); (xxxiv) the Plaintiff's Second Proposed Findings and Recommended Disposition, filed May 4, 2017 (Doc. 118)("Second PFRD"), which addresses all of the above motions (Doc. 118); (xxxv) the Defendants David and Margette Webster's Motion to Dismiss Complaint, filed May 8, 2017 (Doc. 120); (xxxvi) the Plaintiff's Request to the Honorable Judge Browning: Temporary Restraining Order Filed on State District Court and Evidentiary Hearing and Recusal of the Judge Lynch for Fraud Upon the Court, filed May 8, 2017 (Doc. 121); (xxxvii) the Plaintiff's Request to Judge Browning: Emergency Order to Cease and Desist Collections on False State District Court Award," filed on May 11, 2017, which the

Court construes as another motion for injunctive relief (Doc. 123); (xxxviii) the Plaintiff's Objection to Dismissal of Complaint, filed May 12, 2017 (Doc. 125), which the Court construes as a motion for discovery and for sanctions; (xxxix) the Plaintiff's Emergency Request from Judge Browning: Order to Bernalillo County Sheriff's Department to Return Serna's Funds, filed May 12, 2017 (Doc. 126), which the Court construes as a motion for injunctive relief (Doc. 126); (xl) the Plaintiff's Relief From Default Judgment Under Rule 55 and 60(b) as per Defendant Wells, filed May 15, 2017 (Doc. 127); (xli) the Plaintiff's Relief from Default Judgment Under Rule 55 and 60(b) as per Defendant Simon, filed May 15, 2017 (Doc. 128); (xlii) the Plaintiff's Relief from Default Judgment Under Rule 55 and 60(b) as to Defendant Chisholm, filed May 15, 2017 (Doc. 129); the Plaintiff's Relief from Default Judgment Under Rule 55 and 60(b) as to Defendant Webster, filed May 15, 2017 (Doc. 130); (xliii) the Plaintiff's for default judgment as to Margette Webster, filed on May 15, 2017 (Doc. 131); Relief from Default Judgment Under Rule 55 and 60(b) as to Defendant Crowley, filed May 15, 2017 (Doc. 132); (xliv) the Plaintiff's Corrections to Defendant's Codes per the Courts Entry of May 04, 2017, filed May 30, 2017, which the Court construes as a motion to amend (Doc. 134); (xlv) the Plaintiff's Objections to the Second Proposed Findings and Recommended Disposition and Grant Judgment in Favor of the Plaintiff on the Findings, filed May 30, 2017 (Doc. 135)("Objections"); (xlvi) the Plaintiff's Objections and Answers to Proposed Findings and Recommendations and Motion to Withdraw the Limited Liability Company Until Counsel is Procured, filed June 13, 2017 (Doc. 137); (xlvii) the Plaintiff's Request for this Objection as Timely on Objection to Dismissal of Defendant Chisholm and Accept His Default Judgment, filed June 15, 2017 (Doc. 138), which the Court construes as another motion for default judgment; (xlviii) Defendant Simon's Motion to Strike and Dismiss Plaintiff's Compliant Pursuant to Fed. R. Civ. P. 12 (e), filed July 24, 2017

(Doc. 139); (xlix) the Plaintiff's Request Cancellation of Defendant Simon's Unscrupulous Motion to Strike Complaint, filed July 27, 2017 (Doc. 140); (l) the Plaintiff's Motion for Leave to Amend Complaint and Add Additional Parties Plus Relief and Memorandum of Law in Support, filed July 31, 2017 (Doc. 141); (li) the Plaintiff's Defendant Webster in Violation of Rule 5 Serving Pleadings and Other Papers on All Parties, filed August 10, 2017 (Doc. 144), which the Court construes as another motion for injunctive relief; (lii) the Plaintiff's Objection to Defendant Simon's Motion to Strike and Dismiss Plaintiff's Complaint, filed August 11, 2017 (Doc. 145), which the Court construes as a motion for sanctions; and (liii) the Plaintiff's Addendum Request: Office of the Clerks to Mail Defendant's [sic] Websters Copies of Court Pleadings Due to "Threats" on Plaintiff, filed August 18, 2017 (Doc. 146), which the Court construes as another motion for injunctive relief. Because the Court agrees with the conclusion of the Honorable William P. Lynch, United States Magistrate Judge for the District of New Mexico, the Court will overrule the Plaintiff's Objections and adopt the Second PFRD; allow Serna ten days to file an amended complaint as to Defendants Alex Chisholm, the Estate of Paul Becht, and Robert Simon; deny the Motion for Hearing; grant the Defendants David Webster and Margette Webster's  Motion to Dismiss; deny Serna's seven Motions for Injunctive Relief and for Sanctions (Docs. 121, 123, 125, 126, 140, 144, 145, 146); deny Serna's eight Motions for Default Judgment; deny Serna's Motions to Amend; dismiss, at Serna's request, Defendants Cindy Molina, Lynette Rodriguez, Madeline Garcia, Sally Galanter, and Ari Biernoff; deny Robert Simon's Motion to Strike and Dismiss; and order Serna to show cause, in writing, within ten days from the date of entry of this Order, why filing restrictions should not be imposed against her.

## FACTUAL AND PROCEDURAL BACKGROUND

The Second PFRD thoroughly lays out factual and procedural history. The Court will not repeat the background.

## LAW REGARDING PLEADING REQUIREMENTS

The decision to strike a pleading or to dismiss an action without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure is within the district court's sound discretion. See Kuehl v. FDIC, 8 F.3d 905, 908 (1st Cir. 1993); Atkins v. Northwest Airlines, Inc., 967 F.2d 1197, 1203 (8th Cir. 1992); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). To state a claim for relief, rule 8(a) requires a plaintiff's complaint to contain "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that [she] is entitled to relief, and (3) a demand for judgment for the relief [he or she] seeks." Fed. R. Civ. P. 8(a). Although the Court is to construe pro se pleadings liberally, a pro se plaintiff must follow the rules of federal and appellate procedure. See Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994).

A pro se complaint is subject to dismissal under rule 8(a) if it is "incomprehensible." Olguin v. Atherton, 215 F.3d 1337 (10th Cir. 2000); Carpenter v. Williams, 86 F.3d 1015, 1016 (10th Cir. 1996). Rule 8(a)'s purpose is to require plaintiffs to state their claims intelligibly so as to give fair notice of the claims to opposing parties and the court. See Mann v. Boatright, 477 F.3d 1140, 1148 (10th Cir. 2007); Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kansas, 891 F.2d 1473, 1480 (10th Cir. 1989). Imprecise pleadings undermine the complaint's utility and violate rule 8's purpose. See Know v. First Security Bank of Utah, 196 F.2d 112, 117 (10th Cir. 1952). Rambling and incomprehensible filings that bury material allegations in "a morass of irrelevancies" do not meet rule 8(a)'s pleading requirement

of a "short and plain statement." Mann v. Boatright, 477 F.3d at 1148. See Ausherman v. stump, 643 F.2d 715, 716 (10th Cir. 1981)(describing a sixty-three-page complaint as "prolix" and concluding that it violated rule 8(a)'s "short and plain" statement requirement).

Moreover, courts should deny leave to amend when it appears that the plaintiff is attempting "to make the complaint 'a moving target[.]'" Minter v. Prime Equipment Co., 451 F.3d 1196, 1206 (10th Cir. 2006)(quoting Viernow v. Euripides Dev. Corp., 157 F.3d 785, 800 (10th Cir. 1988)). It is unreasonable to expect the court or the defendants continually to have to adapt as the plaintiff develops new theories or locates new defendants. There comes a point when even a pro se plaintiff has had sufficient time to investigate and to properly frame his or her claims against specific defendants. See Minter v. Prime Equipment Co., 451 F.3d at 1206.

## LAW REGARDING MOTIONS TO AMEND

"While Rule 15 governs amendments to pleadings generally, Rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders." Bylin v. Billings, 568 F.3d 1224, 1231 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)). When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to the plaintiff's complaint. See Fed. R. Civ. P. 15. When a scheduling order governs the case's pace, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order. See Bylin v. Billings, 568 F.3d at 1231.

Rule 15(a) of the Federal Rules of Civil Procedure provides:

**(1)** **Amending as a Matter of Course**. A party may amend it pleading once as a matter of course within:

    **(A)**      21 days after serving it, or

> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.
>
> **(2) Other Amendments**. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave where justice so requires.

Fed. R. Civ. P. 15(a)(bold and italics in original). Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires. <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); <u>Youell v. Russell</u>, No. CIV 04-1396 JB/WDS, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); <u>Burleson v. ENMR-Plateau Tele. Coop.</u>, No. CIV 05-0073 JB/KBM, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.). The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.," leave to amend should be freely given. <u>Fomen v. Davis</u>, 371 U.S. 178, 182 (1962). <u>See</u> <u>Curley v. Perry</u>, 246 F.3d 1278, 1284 (10th Cir. 2001). <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile." <u>Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv.</u>, 175 F.3d 848, 859 (10th Cir. 1999). <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80. An amendment is "futile" if the pleading "as amended, would be subject to dismissal." <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80 (citing <u>TV Commc'ns Network, Inc. v. Turner Network</u>

Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)). A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). See Youell v. Russell, 2007 WL 709041, at *2-3; Lymon v. Aramark Corp., No. CIV 08-0386 JB/DJS, 2009 WL 1299842 (D.N.M. Feb. 4, 2009)(Browning, J.). The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

Frank v. U.S. W., Inc., 3 F.3d at 1365-66. The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Minter v. Prime Equip. Co., 451 F.3d at 1205 (citing Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004)). Undue delay occurs where the plaintiff's amendments "make the complaint 'a moving target.'" Minter v. Prime Equip. Co., 451 F.3d at 1206 (quoting Viernow v. Euripides Dev. Corp., 157 F.3d at 799-800). "[P]rejudice to the opposing party need not also be shown." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185. "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d at 1185 (quoting State

Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405 (10th Cir. 1984)). Along the same vein, the court will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its complaint. See Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting motion to amend filed "was not based on new evidence unavailable at the time of the original filing").

Refusing leave to amend is generally justified only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. See Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)(citing Foman v. Davis, 371 U.S. at 182). Again, the matter is left to the court's discretion. Frank v. U.S. W., Inc., 3 F.3d at 1365-66. See Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc., 3 F.3d at 1365-66, and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court"). "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a) ] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schs., 2007 WL 1306814, at *2 (D.N.M. 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., 2005 WL 3664299 at *2 (D.N.M. 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has construed Eleventh Amendment immunity to prohibit federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent. See Port Auth. Trans–Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). State agencies and state officials are likewise provided immunity as "an arm of the state." Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280–81 (1977).

Exceptions to a state's Eleventh Amendment immunity are few. See, e.g., Ex parte Young, 209 U.S. 123, 159–60 (1908)("If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States."). A state may, however, voluntarily waive its immunity. See Edelman v. Jordan, 415 U.S. 651, 673 (1974). Congress may also abrogate Eleventh Amendment immunity pursuant to Section 5 of the Fourteenth Amendment to the Constitution of the United States, where the statute explicitly manifests Congress' intent to do so. See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976). Congress did not, however, abrogate Eleventh Amendment immunity when enacting 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 340 (1979). Consequently, Eleventh Amendment immunity extends to defendants

under that statute, and claims against the state pursuant to § 1983 in the federal courts are barred as a matter of law.

Although not properly characterized as an exception to a state's Eleventh Amendment immunity, the doctrine that the Supreme Court announced in Ex parte Young, 209 U.S. at 128, allows for suits against state officials under certain circumstances. See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d 602, 607-08 (10th Cir. 1998)("The Ex parte Young doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state."). In Ex parte Young, the Supreme Court held that the Eleventh Amendment bar generally does not apply in federal court to state officials defending against suit which seeks only prospective relief from violations of federal law. See Ex parte Young, 209 U.S. at 28. The Ex parte Young doctrine allows suit to proceed against defendant state officials if the following requirements are met: (i) the plaintiffs are suing state officials rather the state itself; (ii) the plaintiffs have alleged a non-frivolous violation of federal law; (iii) the plaintiffs seek prospective equitable relief rather than retroactive monetary relief from the state treasury; and (iv) the suit does not implicate special sovereignty interests. See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d at 609.

## LAW REGARDING JUDICIAL IMMUNITY

"[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355–56 (1978). That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors." Stump v. Sparkman, 435 U.S. at 359.

The Supreme Court has emphasized that a judge's immunity from § 1983 liability "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11–12 (1991)(citations omitted). The Supreme Court has also held that absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights." Pierson v. Ray, 386 U.S. 547, 554 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).

The Tenth Circuit has also recognized that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." Guttman v. Khalsa, 446 F.3d 1027, 1033 (2006)(citing Butz v. Economou, 438 U.S. at 514, 98 S. Ct. 2894). For an official at an administrative hearing to enjoy absolute immunity, "(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." Guttman v. Khalsa, 446 F.3d at 1033 (quoting Horwitz v. State Bd. of Med. Examr's, 822 F.2d 1508, 1513 (10th Cir. 1987)("Horwitz")(internal quotation marks omitted)).

In Guttman v. Khalsa, a doctor who suffered from depression and post-traumatic stress disorder appeared before the Impaired Physicians Committee of the New Mexico Board of Medical Examiners to respond to complaints about his professional conduct. See 446 F.3d at 1030. The Committee in Guttman v. Khalsa issued a "Notice of Contemplated Action and an Order of Summary Suspension" of the doctor's medical license based on alleged mental illness

and lying to the Committee. 446 F.3d at 1030. The New Mexico Board of Medical Examiners then held a hearing, during which one of the defendants acted as Administrative Prosecutor. See 446 F.3d at 1030. The New Mexico Board of Medical Examiners in Guttman v. Khalsa revoked the doctor's medical license pursuant to its statutory authority to do so. See 446 F.3d at 1030.

The doctor in Guttman v. Khalsa appealed the decision to the Seventh Judicial District of New Mexico. See 446 F.3d at 1030. The Seventh Judicial District of New Mexico denied the appeal, and the doctor then appealed to the Court of Appeals of New Mexico. See 446 F.3d at 1030. After the Court of Appeals of New Mexico affirmed, the doctor filed a petition for certiorari with the Supreme Court of New Mexico. See 446 F.3d at 1030. Before the Supreme Court of New Mexico could act on the petition, the doctor filed a lawsuit in federal court, alleging, among other things, violations of his constitutional rights. See 446 F.3d at 1030.

The Tenth Circuit concluded that the Administrative Prosecutor and the individual who presided over the three-day hearing in front of the New Mexico Board of Medical Examiners enjoyed absolute immunity. See Guttman v. Khalsa, 446 F.3d at 1032. The basis for the hearing officer's immunity in Guttman v. Khalsa was that he had served a quasi-judicial function. See 446 F.3d at 1032.

The Tenth Circuit in Guttman v. Khalsa also relied on Horwitz. See 822 F.2d at 1508. In Horwitz, the Tenth Circuit concluded that members of the State Board of Medical Examiners for the State of Colorado enjoyed absolute immunity for actions it took in filing a formal complaint against a doctor, and in temporarily suspending his right to practice medicine pending investigations and hearings. See 822 F.2d at 1510, 1515. The Tenth Circuit reasoned that the defendant Board members were performing adjudicatory and prosecutorial functions. See 822 F.2d at 1515. The Tenth Circuit also noted:

There exists a strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation. There exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits. It is important to insulate Board members from political influences in meeting their adjudicatory responsibilities in the adversarial setting involving licensure to practice medicine. Public policy requires that officials serving in such capacities be exempt from personal liability.

822 F.2d at 1515. Finally, the Tenth Circuit noted the Board members' functions, observing that

Board members

serve in the prosecutorial role in that they, among other things, initiate complaints, start hearings, make investigations, take evidence, and issue subpoenas. They also serve in the adjudicative role, as judges. Thus, the Board duties are "functionally comparable" to a court of law. And we are reminded that, with respect to immunity, we must include all acts of the official performing statutory duties as having "[m]ore or less connection with the general matters committed by law" to his station.

822 F.2d at 1515.

Although certain officers enjoy immunity from suit for acts taken in a quasi-judicial setting, the Supreme Court has held that court reporters do not enjoy such immunity. Rejecting a court reporter's assertion of absolute immunity, the Supreme Court stated: "We are also unpersuaded by the contention that our functional approach to immunity . . . requires that absolute immunity be extended to court reporters because they are part of the judicial function." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435, 113 S. Ct. 2167, 124 L.Ed.2d 391 (1993). Rather, in the Supreme Court's view,

[t]he doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability. Accordingly, the "touchstone" for the doctrine's applicability has been "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." [Burns v. Reed,] 500 U.S. [478,] 500 [ (1991) ](Scalia, J., concurring in judgment in part and dissenting in part). When judicial immunity is extended to officials other than judges, it is because their judgments are "functional[ly] comparab[le]" to those of judges -- that is, because they, too,

- 16 -

"exercise a discretionary judgment" as a part of their function.  Imbler v. Pachtman, 424 U.S. [409], 423, n.20, 96 S. Ct. 984, 47 L.Ed.2d 128 [ (1976) ].

Antoine v. Byers & Anderson, Inc., 508 U.S. at 435-36 (footnote omitted)(final two alterations in original).

In light of this understanding of judicial immunity, the Supreme Court concluded that the function that court reporters perform is not one that would lead to a grant of immunity.  See 508 U.S. at 436.  The Supreme Court reasoned that court reporters "are afforded no discretion" in carrying out their duty and that they are "not absolutely immune because their duties are ministerial, not discretionary in nature." 508 U.S. at 436 (citations omitted)(internal quotation marks omitted).

The Court has also drawn distinctions between when a person is acting in a judicial role, such that they are entitled to quasi-judicial immunity, and when a person in a quasi-judicial setting plays a merely ministerial role.  See Duprey v. Twelfth Judicial Dist. Court, 760 F. Supp. 2d 1180, 1204 (D.N.M. 2009)(Browning, J.).  In Duprey v. Twelfth Judicial District Court, the Court concluded that the state defendant who acted as chairperson of the judicial grievance board was entitled to absolute immunity, because his function was similar to that of an administrative law judge in a quasi-judicial setting.  See 760 F. Supp. 2d at 1204.  The Court stated that the director of human resources for the New Mexico Administrative Office of the Courts was not entitled to absolute immunity, because her role was ministerial and mechanical.  See 760 F. Supp. 2d at 1204. In analyzing each defendant's function, the Court focused on participation in the deliberative process and the exercise of independent judgment.  See 760 F. Supp. 2d at 1205. The Court determined that, because the human resources director played a ministerial role and did not act at a judge's direction, she was not entitled to judicial immunity.  See 760 F. Supp. 2d at 1208 ("An individual whose job at a judicial proceeding is to run a tape recorder is not one

who needs to be able to act according to her own convictions."). See also Braverman v. New Mexico, No. 11–0829, 2011 WL 6013587, at *20 (D.N.M. Oct. 19, 2011)(Browning, J.) (concluding that judicial immunity probably protects a state judge and special master from suit when denying a motion for a temporary restraining order).

## LAW REGARDING ARBITRAL IMMUNITY

"The doctrine [of arbitral immunity] rest on the notion that arbitrators acting within their quasi-judicial duties are the functional equivalent of judges and, as such, should be afforded similar protection." Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d 1155, 1158 (10th Cir. 2007)(citing Olson v. Nat'l Ass'n of Sec. Dealers, 85 F.3d 381, 382 (8th Cir. 1996)). "[A]rbitral immunity has been held to be 'essential to protect the decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants.'" Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d at 1158 (quoting New England Cleaning Servs., Inc. v. Am. Arbitration Ass'n, 199 F.3d 542, 545 (1st Cir. 1999)).

Every Court of Appeals to have considered the issue recognizes the doctrine of arbitral immunity. See, e.g., Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d at 1159-60; Hutchins v. Am. Arbitration Ass'n, 108 Fed. Appx. 647, 648 (1st Cir. 2004); Austern v. Chicago Bd. of Options Exch., Inc., 898 F.2d 882 (2d Cir. 1990); Cahn v. Int'l Ladies Garment Union, 311 F.2d 113 (3d Cir. 1962); Shrader v. NASD, Inc., 54 F.3d 744 (4th Cir. 1995); Hawkins v. NASD, Inc., 149 F.3d 330 (5th Cir. 1998); Corey v. New York Stock Exch., Inc., 691 F.2d 1205 (6th Cir. 1982); Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, 312 F.3d 833 (7th Cir. 2002); Honn v. NASD, 182 F.3d 1014 (8th Cir. 1999); Wasyl, Inc. v. First Boston Corp., 813 F.2d 1579 (9th Cir. 1987). Indeed, even the Supreme Court supports the doctrine of arbitral immunity. See Butz v. Economou, 438 U.S. 478, 508-11 (1978)(holding that there are certain persons whose

special functions require a full exemption from liability for acts committed within the scope of their duties). "These courts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration." Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d at 1159.

While arbitral immunity does not protect arbitrators from all claims asserted against them, the key "is whether the claim at issue arises out of a decisional act." Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith, 477 F.3d at 1159 (citing Maureen A. Weston, Reexamining Arbitral Immunity in an Age of Mandatory and Professional Arbitration, 88 Min. L. Rev. 449, 505 (Feb. 2004)). When a claim seeks to challenge the "decisional act of an arbitrator," the doctrine of arbitral immunity applies. Weston, supra, at 505.

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. CIV 08–0181 JB/LFG, 2009 WL 1329834, at *10 (D.N.M. April 28, 2009) (Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The Supreme Court deems it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." Butz v. Economou, 438 U.S. 478, 504 (1978). "The qualified immunity analysis is the same whether the claims are brought under Bivens[3] or pursuant to the post-Civil War Civil

---

[3]In Bivens, the Supreme Court recognized that citizens may obtain money damages for injuries suffered as a result of federal agents' violation of the Fourth Amendment. See 403 U.S.

Rights Acts." Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997), overruled on other grounds as recognized in Currier v. Doran, 242 F.3d 905 (10th Cir. 2001).

> Under § 1983 (invoked in this case) and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 . . . (1971), a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights. But to ensure that fear of liability will not "unduly inhibit officials in the discharge of their duties," Anderson v. Creighton, 483 U.S. 635, 638 . . . (1987), the officials may claim qualified immunity; so long as they have not violated a "clearly established" right, they are shielded from personal liability, Harlow v. Fitzgerald, 457 U.S. 800, 818 . . . (1982). That means a court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply

at 395-97. "In Bivens -- proceeding on the theory that a right suggests a remedy -- this Court 'recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)(quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001)). Copar Pumice Co., Inc. v. Morris, No. CIV 07-0079 JB/ACT, 2009 WL 5201799, *13 (D.N.M. 2009)(Browning, J.)(noting that, in Bivens, the Supreme Court held that, "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'")(quoting Bivens, 403 U.S. at 396-97). Bivens suits are the "federal analog" to suits brought against state officials under 42 U.S.C. § 1983. Ashcroft v. Iqbal, 556 U.S. at 675-76. Unlike suits under § 1983, however, Bivens does not allow a plaintiff to seek equitable relief -- he or she may only seek damages for alleged constitutional violations, and must look to other areas of the law to receive equitable relief for his or her injuries. See Bivens, 403 U.S. at 410 (Harlan, J., concurring)("For people in Bivens' shoes, it is damages or nothing.").

> [T]he decision whether to recognize a Bivens remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the [constitutionally recognized] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. . . . But even in the absence of an alternative, a Bivens remedy is a subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."

Wilkie v. Robbins, 551 U.S. 537, 550 (2007)(quoting Bush v. Lucas, 462 U.S. 367, 378 (1983)). "In sum, the concept of special factors counselling hesitation in the absence of affirmative action by Congress has proved to include an appropriate judicial deference to indications that congressional inaction has not been inadvertent." Schweiker v. Chilicky, 487 U.S. 412, 423 (1988). See Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv., 921 F. Supp. 2d 1137, 1176-77 (D.N.M. 2013)(Browning, J.), on reconsideration in part, 58 F. Supp. 3d 1191 (D.N.M. 2014).

dismiss the claim for money damages. The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

Camreta v. Green, 563 U.S. 692, 705 (2011).

Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)). "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." Lewis v. Tripp, 604 F.3d 1221, 1230 (10th Cir. 2010).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. at 231, 129 S. Ct. 808 (quoting Harlow v. Fitzgerald, 457 U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken beliefs" and operates to protect officers from the law's sometimes "hazy border[s]." Saucier v. Katz, 533 U.S. 194, 205 (2001). When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct. See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

**1.      Procedural Approach to Qualified Immunity.**

In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." 555 U.S. at 236. The Supreme Court also noted that, while no longer mandatory, the protocol Saucier v. Katz outlined -- by which a court first decides if the defendant's actions violated the Constitution, and then the court determines if the right violated was clearly established -- will

often be beneficial.  See Pearson v. Callahan, 555 U.S. at 241.  In rejecting the prior mandatory approach, the Supreme Court recognized that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," and that such an approach burdens district court and courts of appeals with "what may seem to be an essentially academic exercise."  555 U.S. at 237.  The Supreme Court also recognized that the prior mandatory approach "departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable." 555 U.S. at 241, 129 S. Ct. 808 (alterations omitted)(internal quotation marks omitted). See Reichle v. Howards, 566 U.S. 658 (2012)(affirming Pearson v. Callahan's procedure and noting that deciding qualified immunity issues on the basis of a right being not "clearly established" by prior case law "comports with our usual reluctance to decide constitutional questions unnecessarily"). Once the plaintiff establishes an inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870–71 (10th Cir. 1993).

The Supreme Court recognizes seven circumstances where district courts should proceed directly to and "should address only" the clearly established prong of the qualified immunity analysis: when (i) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (ii) "it appears that the question will soon be decided by a higher court"; (iii) deciding the constitutional question requires "an uncertain interpretation of state law"; (iv) "qualified immunity is asserted at the pleading stage," and "the precise factual basis for the . . . claim . . . may be hard to identify"; (v) tackling the first element "may create a risk of bad decisionmaking," because of inadequate briefing; (vi) discussing both elements risks

"bad decisionmaking," because the court is firmly convinced that the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (vii) the doctrine of "constitutional avoidance" suggests the wisdom of passing on the first constitutional question when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  Kerns v. Bader, 663 F.3d 1173, 1180–81 (10th Cir. 2011)(quoting Pearson v. Callahan, 555 U.S. at 236-42)(internal quotation marks omitted).  Regarding the last of these seven circumstances, the Supreme Court has clarified that courts may "avoid avoidance" and address the first prong before the second prong in cases involving a recurring fact pattern, where guidance on the constitutionality of the challenged conduct is necessary, and the conduct is likely only to face challenges in the qualified immunity context.  Camreta v. Greene, 563 U.S. at 706 (2011).  See Kerns v. Bader, 663 F.3d at 1181. "Courts should think carefully before expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'"  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)(quoting Pearson v. Callahan, 555 U.S. at 236-37).  See Camreta v. Greene, 131 S. Ct. at 2032 ("In general, courts should think hard, and then think hard again, before turning small cases into large ones."). The Tenth Circuit will remand a case to the district court for further consideration when the district court has given cursory treatment to the clearly established prong of the qualified immunity analysis. See Kerns v. Bader, 663 F.3d at 1182.

**2.**      **Clearly Established Rights in the Qualified Immunity Analysis.**

To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right.  See Casey v. W. Las Vegas Indep.

Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007). "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" Lobozzo v. Colo. Dep't of Corr., 429 Fed. Appx. 707, 710 (10th Cir. 2011)(unpublished)(quoting Zweibon v. Mitchell, 720 F.2d 162, 172–73 (D.C.Cir. 1983)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. at 640. "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(alteration in original)(quoting Saucier v. Katz, 533 U.S. at 202). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The Supreme Court has clarified that the clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing

violates that right." Ashcroft v. al–Kidd, 563 U.S. at 741.  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, 132 S.Ct. at 2093 (quoting Ashcroft v. al–Kidd, 563 U.S. at 741).  "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." Anderson v. Creighton, 483 U.S. at 639.  "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." Ashcroft v. al–Kidd, 563 U.S. at 742.  The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs" on the application of law to facts and operates to protect officers from the law's sometimes "hazy border [s]." Saucier v. Katz, 533 U.S. at 205.

The Tenth Circuit held in Kerns v. Bader -- an opinion that the then-Judge, now Justice, Gorsuch wrote -- that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction might make a constitutional difference."  663 F.3d 1173, 1188 (2011)(emphasis in original).  In Kerns v. Bader, dealing with the search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification." 663 F.3d at 1183 (emphasis added).  Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established.  See Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.").

"[W]hen an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law." Casey v. City of Fed. Heights, 509 F.3d at 1284. Furthermore, "general statements of the law are not inherently incapable of giving fair and clear warning. . . ." Hope v. Pelzer, 536 U.S. 730, 741 (2002).

In Rivera v. Bates, No. CIV 12–0473 JB/RHS, 2014 WL 3421050 (D.N.M. June 21, 2014)(Browning, J.), the Court used the Kerns v. Bader qualified-immunity framework to determine if it was clearly established that arresting a suspect in his underwear and failing to retrieve his clothing to cover him while transporting him from his house to a patrol car makes the arrest unreasonable. See 2014 WL 3421050, at *54. The Court stated:

> Even if the Court could, on the record before it, conclude, as a matter of law, that the manner in which Hernandez effectuated the arrest was [un]reasonable, the Court finds that the law was not clearly established such that a reasonable officer in Hernandez' position would have recognized that he needed to retrieve clothing for S. Rivera rather than escort him directly to the police vehicle. As the Tenth Circuit has emphasized, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction might make a constitutional difference." Kerns v. Bader, 663 F.3d at 1188 (emphasis in original). In Kerns v. Bader, dealing with the search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification." 663 F.3d at 1183 (emphasis added). Here, S. Rivera has relied on Cortez v. McCauley[, 478 F.3d 1108 (10th Cir. 2007)] to establish that his clearly established rights were violated, but the Tenth Circuit in that case stated that it had "little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment." 478 F.3d at 1128. The Tenth Circuit only made one comment regarding Cortez' clothing during the arrest:
>
> > Although the dignity aspects of this arrest are troubling, specifically hauling Rick Cortez (clad only in his shorts) into the patrol car in the middle of the night without any explanation, the police were investigating a serious felony and claimed a need for quick action to separate the accused from any other children that might be in the home.

478 F.3d 1108, 1128-29 (10th Cir. 2007). The Tenth Circuit did not explain what would have to be different about the "dignity aspects" for the arrest to violate the Fourth Amendment. More importantly, the Court emphasizes that Hernandez did not participate in any of the alleged wrongdoing inside S. Rivera's house, nor did he refuse to allow S. Rivera to get dressed; instead, Hernandez was involved in the arrest only after S. Rivera was outside the house. S. Rivera has not pointed to, nor has the Court been able to identify, any cases that demand that an officer delay taking the arrestee to a police vehicle so the officer can enter the arrestee's home to search for clothing or otherwise find some covering for an arrestee on the way to the police vehicle. The Court will thus grant the MSJ on S. Rivera's excessive and unreasonable force claim against Hernandez.

Rivera v. Bates, 2014 WL 3421050, at *54 (emphasis in original).

## LAW REGARDING LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983

Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Individual, non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(McKay, J.)("The

requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)(Henry, J.)). The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor." Garcia v. Casaus, No. CIV 11–0011 JB/RHS, 2011 WL 7444745, at *25 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307–08 (10th Cir. 1998)(Seymour, J.).

Government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations. Trask v. Franco, 446 F.3d at 1046. The Tenth Circuit has explained that § 1983 liability should be "'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" Martinez v. Carson, 697 F.3d at 1255 (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. at 663). "Thus, Defendants are liable for the harm proximately caused by their

conduct." Martinez v. Carson, 697 F.3d at 1255 (citing Trask v. Franco, 446 F.3d at 1046). As the Court has previously concluded, "a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. The recovery should be guided by common-law tort principles -- including principles of causation. . . ." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009)(Browning, J.).

The Tenth Circuit has found liability for defendants who proximately cause an injury alleged under § 1983, explaining that the "conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant]," so long as there was not a superseding-intervening cause of a plaintiff's harm. Lippoldt v. Cole, 468 F.3d 1204, 1220 (10th Cir. 2006).

> Even if a factfinder concludes that the residential search was unlawful, the officers only "would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct." Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995). "They would not, however, necessarily be liable for all of the harm caused in the 'philosophic' or but-for sense by the illegal entry." 72 F.3d 400. In civil rights cases, a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability. See, e.g., Warner v. Orange Cnty. Dep't of Prob., 115 F.3d 1068, 1071 (2d Cir. 1997); Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987), abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 . . . (1989).

Trask v. Franco, 446 F.3d at 1046. Thus, in the context of a claim under the Fourth Amendment, the Tenth Circuit has held that government actors "may be held liable if the further unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability." Martinez v. Carson, 697 F.3d at 1255. The Tenth Circuit gave an example of a superseding intervening cause, quoting the Honorable Samuel J. Alito, then-United States Circuit Judge for the United States Court of Appeals for the Third Circuit, now-Associate Justice for the Supreme Court:

> Suppose that three police officers go to a suspect's house to execute an arrest warrant and that they improperly enter without knocking and announcing their presence. Once inside, they encounter the suspect, identify themselves, show him the warrant, and tell him that they are placing him under arrest. The suspect, however, breaks away, shoots and kills two of the officers, and is preparing to shoot the third officer when that officer disarms the suspect and in the process injures him. Is the third officer necessarily liable for the harm caused to the suspect on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful? The obvious answer is "no." The suspect's conduct would constitute a "superseding" cause, see Restatement (Second) of Torts § 442 (1965), that would limit the officer's liability. See id. § 440.

Trask v. Franco, 446 F.3d at 1046 (quoting Bodine v. Warwick, 72 F.3d at 400)(citations in original). Additionally, "[f]oreseeable intervening forces are within the scope of the original risk, and . . . will not supersede the defendant's responsibility." Trask v. Franco, 446 F.3d at 1047 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44, at 303–04 (5th ed.1984)). If

> the reasonable foreseeability of an intervening act's occurrence is a factor in determining whether the intervening act relieves the actor from liability for his antecedent wrongful act, and under the undisputed facts there is room for reasonable difference of opinion as to whether such act was wrongful or foreseeable, the question should be left for the jury.

Trask v. Franco, 446 F.3d at 1047 (citing Restatement (Second) of Torts § 453 cmt. b (1965)).

## LAW REGARDING RACKETEERING CLAIMS

Both federal and state laws prohibit a variety of racketeering activities. New Mexico's racketeering laws are similar to the federal RICO statute, as the latter provided the model for the former. Both federal and state law provide for civil remedies for private individuals and organizations that racketeering activities harm.

### 1.     The Federal RICO Act.

The federal RICO statute, 18 U.S.C. § 1962, proscribes a wide variety of conduct. Specifically, RICO provides:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. . . .

18 U.S.C. § 1962(a). RICO further provides:

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(b)-(d). "Racketeering activity" and "pattern of racketeering activity" are the key concepts underlying RICO, and the statute gives the two phrases precise meanings. More simply, a violation of any subsection of 18 U.S.C. § 1962 requires evidence that the defendant participated in a pattern of racketeering activity. See Bancoklahoma Mortgage Corp. v. Capital Title Co., Inc., 194 F.3d 1089, 1100 (10th Cir. 1999).

Section 1962(1) defines "racketeering activity" as

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), . . . section 1941 (relating to mail fraud, section 1343 (relating to wire fraud), . . . section 1951 (relating to interference with commerce, robbery, or extortion), . . .

Under federal law, "[p]attern of racketeering activity" is defined as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The state crimes that are treated as racketeering activity include "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1962(1)(A). In other words, a pattern of racketeering activity is any two racketeering acts within the space of ten years.

RICO allows for civil suits by "any person injured in his business or property by reason of violation of section 1962 of [RICO]." 18 U.S.C. § 1964(c). RICO also mandates treble damages and recovery of reasonable attorney's fees for a successful claim. See 18 U.S.C. § 1964(c). The Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737, however, limited the scope of potential civil RICO causes of action. In a civil RICO case, a racketeering violation cannot be founded "upon any conduct that would have been actionable as fraud in the purchase or sale of securities," unless the offender was criminally convicted of activity "in connection with the fraud." 18 U.S.C. § 1964(c). Additionally, several courts have held that other federal-fraud offenses, such as mail and wire fraud, can also not be used as predicate offenses where the underlying conduct would be actionable as securities fraud. See, e.g., Bald Eagle Area Sch. Dist. v. Keystone Fin., 189 F.3d 321, 330 (3d Cir. 1999); Blythe v. Deutsche Bank A.G., 399 F. Supp. 2d 274, 278–82 (S.D.N.Y. 2005)(Scheindlin, J.).

The Supreme Court and the Tenth Circuit have held that merely showing two acts of racketeering within the requisite ten-year period is not sufficient to show an actual pattern of racketeering activity. "[T]he statement that a pattern 'requires at least' two predicates implies

'that while two acts are necessary, they may not be sufficient.'" <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 237 (1989). Rather, based upon RICO's legislative history and the ordinary usage of the word "pattern," a pattern of racketeering activity "requires the showing of a relationship between the predicates" and "the threat of continuing activity." <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. at 239 (citation omitted)(internal quotation marks omitted). As the Tenth Circuit has explained, both elements must be present. Even if the racketeering activities are part of a common scheme, there is no showing of a RICO claim if the plaintiff has "failed to show that they pose a threat of continuing criminal activity." <u>Duran v. Carris</u>, 238 F.3d 1268, 1271 (10th Cir. 2001).

### a. <u>Bribery</u>.

18 U.S.C. § 201(b) is the federal anti-bribery statute. Generally, the application of 18 U.S.C. § 201(b) is limited to acts of federal officials or persons "acting for or on behalf of the United States, or any department, agency or branch of the Government thereof . . . ." 18 U.S.C. § 201(a)(1). The statute requires that the actor occupy a position of public trust with official federal responsibilities. <u>See</u> <u>Dixson v. United States</u>, 465 U.S. 482, 496 (1984). The term "public official" is defined as:

> Member of Congress, Delegate, or Resident Commissioner, either before or after such official has qualified, or an officer or employee or person acting for or on behalf of the United States, or any department, agency or branch of Government thereof, including the District of Columbia, in any official function, under or by authority of any such department, agency, or branch of Government, or a juror.

18 U.S.C. § 201(a)(1). "Person who has been selected to be a public official" is defined as "any person who has been nominated or appointed to be a public official, or has been officially informed that such person will be so nominated or appointed." 18 U .S.C. § 201(a)(2).

### b.    <u>Fraud Generally</u>.

To succeed on a claim of fraud, there must be a

> (1) representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent it be acted on; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely on it; and (9) injury.

<u>Tal v. Hogan</u>, 453 F.3d 1244, 1260 (10th Cir. 2006)(citing <u>BancOklahoma Mortgage Corp.</u>, 194 F.3d at 1103).  When there is a complaint alleging fraud, the pleading standard set forth in rule 9(b) of the Federal Rules of Civil Procedure applies.  <u>See</u> <u>Tal v. Hogan</u>, 453 F.3d at 1260. Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed.R.Civ.P. 9(b).  Thus, a party alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  <u>Tal v. Hogan</u>, 453 F.3d at 1260 (citing <u>Koch v. Koch Indus.</u>, 203 F.3d 1202, 1236 (10th Cir. 2000)).

### c.    <u>Mail Fraud</u>.

18 U.S.C. § 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, . . . .

**d.** **Wire Fraud.**

18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . . .

**e.** **Interference with Commerce, Robbery, or Extortion.**

18 U.S.C. § 1951 states, in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

(b) As used in this section—

. . . .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

It would appear that assault would be covered under this provision as the definition of extortion includes "actual or threatened force, violence, . . . ."

New Mexico law also prohibits racketeering activities. Specifically, NMSA § 30–42–4 states, in relevant part:

A. It is unlawful for any person who has received any proceeds derived, directly or indirectly, from a pattern of racketeering activity in which the person has participated, to use or invest, directly or indirectly, any part of the proceeds or the proceeds derived from the investment or use thereof in the acquisition of any interest in, or the establishment or operation of, any enterprise . . . .

B. It is unlawful for any person to engage in a pattern of racketeering activity in order to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . .

C. It is unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity . . . .

Similar to the federal statutes, the New Mexico statute requires a pattern of racketeering

activities. NMSA § 30-42-3 defines "pattern of racketeering activity" as

engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section § 30-42-4 NMSA 1978; provided at least one of the incidents occurred after the effective date of the Racketeering Act and the last incident occurred within five years after the commission of a prior incident of racketeering.

Both the federal and state racketeering statutes prohibit conspiracy in performing the activities

prohibited under the acts. "A conspiracy claim under 18 U.S.C. § 1962(d) fails when the

substantive claim based on § 1962(c) is without merit." Bancoklahoma Mortgage Corp. v.

Capital Title Company, Inc., 194 F3d at 1100 (citing Edwards v. First Nat'l Bank, Bartlesville,

Okla., 872 F.2d 347, 352 (10th Cir. 1989)).

The racketeering acts set forth in the RICO statute are referred to as "predicate acts" and

form the basis for liability under RICO. Bancoklahoma Mortgage Corp. v. Capital Title

Company, Inc., 194 F.3d at 1100 (citing Bacchus Industries, Inc. v. Arvin Industries, Inc., 939

F.2d 887, 891 (10th Cir. 1991)).  "Proof of two or more predicate acts are not sufficient to prove

a pattern unless there is a relationship between the predicate acts and a threat of continuing

activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. at 239; Duran v. Carris, 238 F.3d at 1271.

> Continuity of threat requires both proof of "a series of related predicates extending over a substantial period of time," as well as a "showing that the predicates themselves involve a distinct threat of long-term racketeering activity . . . or that the predicates are a regular way of conducting the defendant's ongoing legitimate business or the RICO enterprise."

Tal v. Hogan, 453 F.3d at 1268 (citing Resolution Trust Corp. v. Stone, 998 F.2d 1534, 1543 (10th Cir. 1993)). It must be shown that the "racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. at 240. See Duran v. Carris, 238 F.3d at 1271.

Only "persons" can violate under § 1962 and be liable for civil damages under § 1964. See Massey v. City of Oklahoma City, 643 F. Supp. 81, 85 (W.D.Okla. 1986)(Alley, J.). A suit against a government official in his official capacity is no different than a lawsuit against the government itself. See Thompson v. City of Lawrence, Kan., 58 F.3d 1511, 1517 (10th Cir. 1995).

**2.      The New Mexico Racketeering Act.**

The Racketeering Act, N.M. Stat. Ann. §§ 30-42-1 to -6, closely tracks RICO's provisions. The New Mexico statute makes it "unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs by engaging in a pattern of racketeering activity." N.M. Stat. Ann. § 30-42-4C. The state Racketeering Act also prohibits conspiring to engage in any violation of the Racketeering Act. See § 30-42-4D. The state act defines "racketeering activity" as "any act that is chargeable or indictable under the laws of New Mexico and punishable by imprisonment for more than one year, involving any of" several enumerated offenses, including larceny, fraud,

embezzlement, extortion, fraudulent securities practices, and violations "of the provisions of Section 4 of the Money Laundering Act." N.M. Stat. Ann. § 30–42–3A. The state act defines "pattern of racketeering activity" as

> engaging in at least two incidents of racketeering with the intent of accomplishing any of the prohibited activities set forth in Subsections A through D of Section 30–42–4 NMSA 1978; provided at least one of the incidents occurred after the effective date of the racketeering act [1980] and the last incident occurred within five years after the commission of a prior incident of racketeering.

N.M. Stat. Ann. § 30-42-3D. The state statute provides for a civil cause of action: "A person who sustains injury to his person, business or property by a pattern of racketeering activity may file an action in the district court for the recovery of three times the actual damages proved and the costs of the suit, including reasonable attorney's fees." N.M. Stat. Ann. § 30-42-6A. It is unclear whether the state Racketeering Act mirrors the federal RICO statute in requiring a showing of continuity and ongoing threat as part of demonstrating a pattern of racketeering activity. The Court of Appeals of New Mexico has required showings of continuity to establish that an informal organization is an enterprise. See State v. Rael, 1990-NMCA-068, ¶¶ 10-12, 981 P.2d 280, 284.

## LAW REGARDING DISMISSAL

District courts have the inherent power to manage their dockets. United States v. Schneider, 594 F.3d 1219, 1226 (10th Cir. 2010)(citing Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962); United States v. Nicholson, 983 F.2d 983, 988 (10th Cir. 1993). This power includes the ability to "dismiss a frivolous or malicious action . . . even in the absence of [a] statutory provision." Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 306-07 (1989) (quotation omitted).

In reviewing a pro se complaint, the court liberally construes the factual allegations. See Northington v. Jackson, 973 F.2d 1518, 1520-21 (10th Cir. 1992). A pro se plaintiff's pleadings are judged, however, by the same legal standards that apply to all litigants, and a pro se plaintiff must abide by the applicable rules of court. See Ogden v. San Juan County, 32 F.3d at 455. The court is not obligated to craft legal theories for the plaintiff or to supply factual allegations to support the plaintiff's claims. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nor may the court assume the role of advocate for the pro se litigant. See Hall v. Bellmon, 935 F.2d at 1110.

In deciding whether to dismiss the complaint, in whole or in part, the court is to consider whether to allow the plaintiff an opportunity to amend the complaint. Pro se plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. See Reynoldson v. Shillinger, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless amendment would be futile. See Hall v. Bellmon, 935 F.2d at 1109. An amendment is futile if the amended claims would also be subject to immediate dismissal under the rule 12(b)(6) standards. See Bradley v. Val-Mejias, 379 F.3d 892, 901 (10th Cir. 2004).

1.     **Law Regarding Rule 12(b)(1).**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994) (Barrett, J.)(citations omitted). A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 104 (1998)(Scalia, J.)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence."). Rule 12(b)(1) allows a party to raise the defense of

the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1). The

Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally

take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to

subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter

jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002)

(VanBebber, J.).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in
> opposing a rule 12(b)(6) motion: the court must consider the complaint's
> allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v.
> Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is factual, a
> district court may not presume the truthfulness of the complaint's factual
> allegations.  A court has wide discretion to allow affidavits, other documents, and
> a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule
> 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings
> does not convert the motion to a Rule 56 motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at

*8–9 (D.N.M. Mar. 11, 2009)(Browning, J.)(citations omitted).  The United States Court of

Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P.
> 56.  Because at issue in a factual 12(b)(1) motion is the trial court's
> jurisdiction -- its very power to hear the case -- there is substantial authority that
> the trial court is free to weigh the evidence and satisfy itself as to the existence of
> its power to hear the case. In short, no presumptive truthfulness attaches to
> plaintiff's allegations, and the existence of disputed material facts will not
> preclude the trial court from evaluating for itself the merits of jurisdictional
> claims.

Williamson v. Tucker, 645 F.2d 404, 412–13 (5th Cir. 1981)(Randall, J.)(quoting Mortensen v.

First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the

complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on

affidavits or other evidence properly before the court. See New Mexicans for Bill Richardson v.

Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)(Brorby, J.); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(Baldock, J.).   In those instances where the parties go beyond the pleadings, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.   See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)(Anderson, J.)).   Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion either under rule 12(b)(6) or rule 56.   See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999)(Murphy, J.); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997)(Briscoe, J.). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'" Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(Hartz, J.)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)(Seymour, J.)).

     2.      **Law Regarding Rule 12(b)(2).**

Motions to dismiss under rule 12(b)(2) test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction.   See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153-54 (2d Cir. 1999).   Rule 12(b)(2) concerns lack of personal jurisdiction.   See Fed. R. Civ. P. 12(b)(2).   In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated.   See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction").   Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears

the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements. See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988); Jemez Agency, Inc. v. CIGNA Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J). At this stage of the proceedings, it is not for the court to resolve disputed facts. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002). Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45 (quoting Foster–Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

The plaintiff has the burden of proving personal jurisdiction. The court's jurisdiction may rest on general or specific personal jurisdiction. Due process, however, limits any state statutory basis for personal jurisdiction.

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> When jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction. [Wenz v. Memery Crystal, 55 F.3d at 1505]. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit." Behagen v. Amateur Basketball Ass'n, 744 F.2d [731,] 733 [(10th Cir. 1984)]. When, however, a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. See Doe v. Nat'l Med. Servs., 974 F.2d 143, 145 (10th Cir. 1992). Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in favor of the plaintiff. See Wenz v. Memery Crystal, 55 F.3d at 1505; Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733.

Clark v. Meijer, Inc., 376 F. Supp. 2d 1077, 1082 (D.N.M.2004)(Browning, J.). When, however, "personal jurisdiction is assessed in an evidentiary hearing . . . , the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 n.4 (10th Cir. 2008). "The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002–NMSC–018, ¶ 6, 132 N.M. 312, 48 P.3d 50, 54. Consequently, the Court "need not conduct a statutory analysis apart from the due process analysis." Marcus Food Co. v. DiPanfilo, 671 F.3d at 1166 (internal quotation marks omitted).

Depending on the character and extent of a defendant's contacts, a court may exercise general or specific personal jurisdiction. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078 (emphasis in original). Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

A court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. at 472 (citations omitted)(internal quotation marks omitted). In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Cases involving the internet amplify these general personal jurisdiction principles. In these cases, the United States Court of Appeals for the Tenth Circuit focuses whether the website or internet user "*intentionally direct[ed]* his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011)(emphasis in original). Simply posting defamatory statements on a website will not, standing alone, establish personal jurisdiction over the poster in any state where the post may be read. See Shrader v. Biddinger, 633 F.3d at 1241. Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." Shrader v. Biddinger, 633 F.3d at 1241. In short, "the forum state itself must be the focal point of the tort." Shrader v. Biddinger, 633 F.3d at 1244 (emphasis in original)(quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1074 n.9)(internal quotation marks omitted).

The due-process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he or she "purposefully availed" himself or

herself of the protections or benefits of the state's laws, and "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. at 473-76. See also Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1159-60 (10th Cir. 2010)(reiterating the Burger King Corp. v. Rudzewicz standard). Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 473, 478; Marcus Food Co. v. DiPanfilo, 671 F.3d at 1166).

> A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(internal citation omitted); see also Hanson v. Denckla, 357 U.S. 235, 253 (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d at 1287-88. The Supreme Court has held that the mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"). In Roberts v. Piper Aircraft Corp., 1983-NMCA-110, the Court of Appeals of New Mexico similarly rejected the argument that foreseeability could establish minimum contacts, and found no personal jurisdiction or minimum contacts in the following circumstances:

[T]he record is devoid of any contact between Scenic Aviation and New Mexico. Scenic Aviation is a fixed-base operator selling aviation fuel in Las Vegas, Nevada. There is no evidence that Scenic Aviation advertises in New Mexico, or sells fuel to New Mexico residents. Without "contacts, ties, or relations" with New Mexico the fact that fuel sold by Scenic Aviation found its way into our state does not support a valid exercise of personal jurisdiction.

1983-NMCA-110, ¶ 19. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297. As the Tenth Circuit has further explained, because "mere foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

Similarly, to find general jurisdiction over a defendant, contacts must be "continuous and systematic"; therefore, "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there"; "correspondence with a forum resident does not support general jurisdiction"; and "sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction," because a "[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits." Shrader v. Biddinger, 633 F.3d at 1247. "[G]eneral jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state." Shrader v. Biddinger, 633 F.3d at 1246. When analyzing minimum contacts sufficient for general jurisdiction in regard to the operation

of a web site, the Tenth Circuit has referred to, without adopting, a "sliding scale" framework.

Shrader v. Biddinger, 633 F.3d at 1242 n.5.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Shrader v. Biddinger, 633 F.3d at 1242 n. 5 (internal quotation marks omitted).

> If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 . . . (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008). We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:

>> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

> Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." TH Agric. & Nutrition, LLC, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 671 F.3d at 1167.

In Silver v. Brown, 678 F. Supp. 2d 1187 (D.N.M.2009)(Browning, J.), aff'd in part and rev'd in part, 382 Fed.Appx. 723 (10th Cir. 2010), the Court considered whether it had personal jurisdiction over defendants who allegedly slandered, defamed, and caused the plaintiff -- Michael Silver -- duress, by posting a blog on the internet that portrayed him in a negative light. See 678 F. Supp. 2d at 1204. The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way." 382 Fed.Appx. at 727. The Court also concluded that it did not have personal jurisdiction over the blog post's author -- Matthew Brown -- because he was not domiciled in New Mexico, had not traveled to New Mexico, and did not transact business there. See 678 F. Supp. 2d at 1211. The Court said that Brown's blog posts similarly did not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website. No services are offered, and Brown is not collecting revenue from the website. Brown does not interact with the people who post information on the blog. Brown, to the Court's knowledge, did not solicit negative postings on the website. Further, even though people in New Mexico can view the website, the blog is not a website that is directed solely at the people of New Mexico. The number of people who can access the website in New Mexico in comparison to those who are able to access the website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed its decision as to Brown. See Silver v. Brown, 382 Fed.Appx. at 727-32. In an opinion that the Honorable Monrow G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and Judges Broby and Ebel joined, the Tenth Circuit applied the three-part test from Calder v. Jones to conclude that the Court had personal jurisdiction over Brown. See Silver v. Brown, 382 Fed.Appx. at 727–32.

Judge McKay first explained that the blog posting was "clearly an intentional act" designed to damage the plaintiff's reputation. 382 Fed.Appx. at 729. Second, Judge McKay said that Brown had "expressly aimed his blog at New Mexico[,]" where Silver, his business, and the majority of his customers were located. 382 Fed.Appx. at 729. Judge McKay said: "It was about a New Mexico resident and a New Mexico company. The blog complained of Mr. Silver's and [his business'] actions in the failed business deal. Those actions occurred mainly in New Mexico." 382 Fed.Appx. at 729-30. Third, Judge McKay explained that Brown knew Silver would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities." 382 Fed.Appx. at 730.

New Mexico's long-arm statute provides, in relevant part, that its courts may exercise personal jurisdiction over a party "whether or not a citizen or resident of this state ... as to any cause of action arising from: (1) the transaction of business within this state . . . [or] (3) the commission of a tortious act within this state . . ." N.M.S.A. § 38-1-16. For New Mexico courts

> to exercise personal jurisdiction over nonresident, out-of-state defendants, the following three-part test must be satisfied:
>
>> (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.
>
> State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)(citing Salas v. Homestake Enterprises, Inc., 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987)). The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts."

F.D.K. v. Hiatt, 1994–NMSC–044, ¶ 7, 872 P.2d 879, 881. "When negligent acts occur outside New Mexico which cause injury within the state, a 'tortious act' has been committed for purposes of the long-arm statute." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57. "As with the transaction of business analysis, rather than

engage in a technical analysis of whether the defendant committed a tortious act, we must equate the 'tortious act' which the defendant is alleged to have committed with minimum contacts to determine if due process has been satisfied." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 132 N.M. 312, 48 P.3d at 57 (alteration omitted)(internal quotation marks omitted).

The Court recently decided cases dealing with general and specific jurisdiction. In Fabara v. GoFit, LLC, 308 F.R.D. 380 (D.N.M.2015)(Browning, J.), a plaintiff injured by an allegedly defective exercise ball in New Mexico brought suit against the manufacturer, which was incorporated and headquartered in Oklahoma. See 308 F.R.D. at 408. The manufacturer moved to dismiss the complaint under rule 12(b)(2), arguing that the plaintiff lacked general jurisdiction because its contacts with New Mexico were neither continuous nor systematic. See 308 F.R.D. at 384. The plaintiff responded with photographs of the manufacturers' products in several stores, arguing that the manufacturer delivered the exercise balls into the stream of commerce with the expectation that New Mexico customers would purchase and use them. See 308 F.R.D. at 389. The Court rejected this theory, explaining that the manufacturer's contacts with New Mexico were not "so systematic and continuous as to make it essentially at home here." 308 F.R.D. at 397. The Court noted that the manufacturer had almost no physical connections with New Mexico, and that its internet sales of roughly $20,000.00 over nine years were insufficiently "substantial" to support general jurisdiction. 308 F.R.D. at 402.

In Diener v. Trapeze Asset Management, Inc., No. CIV 15-0566 JB/LAM, 2015 WL 8332933, at *1 (D.N.M. Nov. 30, 2015) the Court considered whether it had specific jurisdiction over a Canadian asset management firm that maintained a passive website, placed its name in a third party's money-manager listing, mailed marketing materials to New Mexico, had telephone

conversations with plaintiffs located in New Mexico, and ultimately entered into a contract with plaintiffs located in New Mexico. <u>See</u> 2015 WL 8332933, at *1. The Court concluded that it did not have specific jurisdiction for four primary reasons. <u>See</u> 2015 WL 8332933, at *1. First, the website was wholly passive and did not allow visitors "the opportunity to invest or interact with the site." 2015 WL 8332933, at *15. Second, the third-party listing was similarly passive. <u>See</u> 2015 WL 8332933, at *15. Third, the Court noted that "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," noting that the alleged torts occurred in Canada. 2015 WL 8332933, at *17 (quoting <u>Benton v. Cameco Corp.</u>, 375 F.3d 1070, 1077 (10th Cir. 2004)). Fourth, the plaintiffs reached out to the defendants to create the contractual relationship, distinguishing the case from cases finding purposeful availment. <u>See</u> 2015 WL 8332933, at *17 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 473).

### 3. <u>Law Regarding Rule 12(b)(4).</u>

Rule 12(b)(5) provides, in pertinent part: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion . . . (5) insufficient service of process." Fed.R.Civ.P. 12(b)(5). Under rules 12(b)(4) and 12(b)(5), a "defendant may object to plaintiff's failure to comply with the procedural requirements for proper service set forth in or incorporated by Rule 4." <u>Richardson v. Alliance Tire & Rubber Co.</u>, 158 F.R.D. 475, 477 (D. Kan. 1994)(Crow, J.) (quoting 5A C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1353 (2d ed.1990)). "Rules 12(b)(4) and 12(b)(5) allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process." <u>Whitsell v. United States</u>, 198 F.3d 260, 260 (10th Cir. 1999)(citing Fed.R.Civ.P. 12(b)(4), 12(b)(5)). "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the

method of its delivery." <u>Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.</u>, 871 F. Supp. 1331, 1349 (D. Kan. 1994)(Lungstrum, J.)(citation omitted). <u>See United States v. Sharon Steel Corp.</u>, 681 F. Supp. 1492, 1499 n.14 (D. Utah 1987)(Jenkins, J.). "A Rule 12(b)(5) motion ... challenges the mode or lack of delivery of a summons and complaint." <u>Oltremari by McDaniel v. Kansas Social & Rehabilitative Serv.</u>, 871 F. Supp. at 1349. <u>See United States v. Sharon Steel Corp.</u>, 681 F. Supp. at 1499 n.14.

Where a plaintiff does not meet this burden, a court may dismiss for failure to properly serve. <u>See Lasky v. Lansford</u>, 76 Fed App'x. 240, 240-41 (10th Cir. 2003)(unpublished). "Motions under Federal Rules 12(b)(4) and 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the district court a course of action -- quashing the process without dismissing the action -- other than simply dismissing the case when the defendant's defense or objection is sustained." 5B C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1354, at 346 (3d ed. 2004). "Technical defects in a summons do not justify dismissal unless a party is able to demonstrate actual prejudice." <u>Chan v. Society Expeditions, Inc.</u>, 39 F.3d 1398, 1404 (9th Cir. 1994)(citing <u>Fed. Deposit Ins. Corp. v. Swager</u>, 773 F. Supp. 1244, 1249 (D. Minn. 1991); <u>United Food v. Commercial Workers Union</u>, 736 F.2d 1371, 1382 (9th Cir. 1984)). <u>See U.S.A. Nutrasource, Inc. v. CNA Ins. Co.</u>, 140 F. Supp. 2d 1049, 1052-53 (N.D. Cal. 2001)(Hamilton, J.)("Dismissals for defects in the form of summons are generally disfavored. Such defects are considered 'technical' and hence are not a ground for dismissal unless the defendant demonstrates actual prejudice." (citation omitted)). "[W]hen a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant." <u>Pell v. Azar Nut Co., Inc.</u>, 711 F.2d 949, 950 n.2

(10th Cir. 1983)(citing 5 C. Wright & A. Miller, <u>Federal Practice and Procedure</u> § 1354, at 586–87 (1969)).

> Where service of process is insufficient, the courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant ... even though service will ordinarily be quashed and the action preserved where there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly.

<u>Montalbano v. Easco Hand Tools, Inc.</u>, 766 F.2d 737, 740 (2d Cir. 1985)(internal quotations and citations omitted).  In addition, the court has discretion to dismiss the action if it appears unlikely that proper service can or will be instituted. <u>See</u> <u>Pell v. Azar Nut Co., Inc.</u>, 711 F.2d at 950 n.2.

"The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." <u>Light v. Wolf</u>, 816 F.2d 746, 751 (D.C. Cir. 1987)(internal citations and quotations omitted).  "Pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." <u>Moore v. Agency for Int'l Dev.</u>, 994 F.2d 874, 876 (D.D.C. 1993)(internal citations omitted).  Although "district courts do not need to provide detailed guidance to pro se litigants," they should at least "supply minimal notice of the consequences of not complying with procedural rules."  This assistance does not, of course, "constitute a license for a plaintiff filing pro se to ignore the Federal Rules of Civil Procedure."  994 F.2d at 876.

### 4.     <u>Law Regarding Rule 12(b)(6)</u>.

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  <u>Mobley v. McCormick</u>, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency

of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555)(internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere

metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570).

Although affirmative defenses must generally be pled in the defendant's answer, not argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions where: (i) the defendant asserts an immunity defense -- the courts handle these cases differently than other motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M. 2012) (Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519 F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim. If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under this rule."). The defense of limitations is the affirmative defense that is most likely to be established by the uncontroverted facts in the complaint. See 5 Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, A. Benjamin Spencer, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure: Civil § 1277, at 643 (3d ed. 2016). If the complaint

sets forth dates that appear, in the first instance, to fall outside of the statutory limitations period, then the defendant may move for dismissal under rule 12(b)(6). See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.). The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion. Cf. Kincheloe v. Farmer, 214 F.2d 604, 605 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense). It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, 2008 WL 3833472 (W.D. Okla. 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this practice, see Anderson Living Trust v. WPX Energy Prod., LLC, 2014 WL 2750652, at *17, *37-39 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING MOTIONS FOR A MORE DEFINITE STATEMENT UNDER RULE 12(e)

Rule 12(e) of the Federal Rules of Civil Procedure permits a party to file a motion for a more definite statement when that party is required to file a response to a pleading, but the pleading is so vague or ambiguous that a response cannot reasonably be expected to be framed.

See Moya v. Schollenbarger, 465 F.3d 444, 446 n. 2 (10th Cir. 2006)("If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.").  A motion for more definite statement may only be made before filing a responsive pleading and not after.  See Fed.R.Civ.P. 12(e).  The federal courts disfavor motions for a more definite statement in light of the liberal discovery provided under the federal rules, and grant such motions only when the complaint is so vague or ambiguous that a defendant cannot reasonably determine the issues requiring a response.  See Peterson v. Brownlee, 314 F. Supp. 2d 1150, 1155 (D. Kan. 2004)(Lungstrum, J.); Shaffer v. Eden, 209 F.R.D. 460, 464 (D. Kan. 2002).  A motion for a more definite statement is used to provide a remedy only for an unintelligible pleading, rather than to correct inaccurate assertions, add precision, or flesh out a lack of detail.  See Coffey v. McKinley Cnty., No. CIV 09–0028, 2009 WL 3208209, at *2 (D.N.M. Sept. 11, 2009)(Browning, J.); Bannister v. Coronado Fin., Inc., No. CIV 07–620, 2008 WL 2323518, at *10 (D.N.M. Jan. 17, 2008)(Browning, J.); Frazier v. Se. Penn. Transp. Auth., 868 F. Supp. 757, 763 (E.D. Pa. 1994)(Joyner, J.).  The Supreme Court of the United States has held that, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

## LAW REGARDING MOTIONS TO STRIKE

Rule 12(f) of the Federal Rules of Civil Procedures provides:

f) **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

> (2) on motion made by a party either before responding to the pleading or, if a
> response is not allowed, within 21 days after being served with the pleading.

Fed.R.Civ.P. 12(f). Professors Charles Wright and Arthur Miller have recognized, however, that

such motions are not favored and, generally, should be denied:

> The district court possesses considerable discretion in disposing of a Rule 12(f)
> motion to strike redundant, impertinent, immaterial, or scandalous matter.
> However, because federal judges have made it clear, in numerous opinions they
> have rendered in many substantive contexts, that Rule 12(f) motions to strike on
> any of these grounds are not favored, often being considered purely cosmetic or
> "time wasters," there appears to be general judicial agreement, as reflected in the
> extensive case law on the subject, that they should be denied unless the
> challenged allegations have no possible relation or logical connection to the
> subject matter of the controversy . . . .

5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382, at 433-36

(3d. ed. 2004)(footnotes omitted).  Accord Burget v. Capital W. Sec., Inc., No. CIV-09-1015-M,

2009 WL 4807619, at *1 (W.D. Okla. Dec. 8, 2009)(Miles–LaGrange, C.J.)("While motions to

strike are generally disfavored, the decision to grant a motion to strike is within the discretion of

the court.")(citing Scherer v. U.S. Dep't of Educ., 78 Fed.Appx. 687, 689 (10th Cir. 2003)

(unpublished)).

    "Allegations will not be stricken as immaterial under this rule unless they have no

possible bearing on the controversy."  Estate of Gonzales v. AAA Life Ins. Co., No. CIV

11-0486 JB/WDS, 2012 WL 1684599, at *5 (D.N.M. May 8, 2012)(Browning, J.)(quoting Sai

Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09-CV-0455-CVE–FHM,

2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(Eagan, J.)).  "The Court must be convinced

that there are no questions of fact, that any questions of law are clear and not in dispute, and that

under no set of circumstances could the defenses succeed."  Friends of Santa Fe Cnty. v. LAC

Minerals, Inc., 892 F. Supp. 1333, 1343 (D.N.M. 1995)(Hansen, J.)(quoting Carter–Wallace, Inc.

v. Riverton Lab., Inc., 47 F.R.D. 366, 368 (S.D.N.Y. 1969)(Cannella, J.))(internal quotation

marks omitted). Professors Wright and Miller have also commented on what constitutes "immaterial" matter in the context of a motion to strike. "'Immaterial' matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded, or a statement of unnecessary particulars in connection with and descriptive of that which is material." 5C Wright & Miller, supra, § 1382, at 458-60 (footnotes omitted).

Moreover, "[o]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by the motion to strike." Dubrovin v. Ball Corp. Consol. Welfare Ben. Plan for Emps., No. 08-CV-00563-WYD-KMT, 2009 WL 5210498, at *1 (D. Colo. Dec. 23, 2009)(Daniel, J.). Accord Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d 1176, 1184 (D.N.M. 2009)(Browning, J.)(citing Searcy v. Soc. Sec. Admin., 956 F.2d 278, 1992 WL 43490, at *1, *4 (10th Cir. 1992)(unpublished table decision))("Generally . . . motions, briefs, and memoranda may not be attacked by a motion to strike."). "The Federal Rules of Civil Procedure define 'pleadings' as a complaint or third-party complaint; an answer to a complaint, a third-party complaint, a counterclaim, or a crossclaim; and, 'if the court orders one, a reply to an answer.'" Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (quoting Fed.R.Civ.P. 7(a)).

"Striking a pleading or part of a pleading is a drastic remedy and because a motion to strike may often be made as a dilatory tactic, motions to strike under Rule 12(f) generally are disfavored." Estate of Gonzales v. AAA Life Ins. Co., 2012 WL 1684599, at *5 (quoting Sai Broken Arrow C, LLC v. Guardian Emergency Vehicles, Inc., No. 09–CV–0455–CVE–FHM, 2010 WL 132414, at *5 (N.D. Okla. Jan. 8, 2010)(Egan, J.)(internal quotation marks omitted)). "The exception to this principle is that a Court may 'choose to strike a filing that is not allowed

by local rule, such as a surreply filed without leave of court.'" Ysais v. N.M. Judicial Standard Comm'n, 616 F. Supp. 2d at 1184 (citing In re Hopkins, 162 F.3d 1173, 1998 WL 704710, at *3 n.6 (10th Cir. 1998)(unpublished table decision)).

For example, in Skyline Potato, Co., Inc. v. Hi–Land Potato, Co., Inc., No. CIV 10–698, 2012 WL 6846386 (D.N.M. Dec. 31, 2012)(Browning, J.), the Court denied a motion to strike a letter filed with the Court, because the letter was not a pleading and did not pertain to either party's legal defenses or arguments -- the letter expressed one party's position regarding whether the Court should rule on summary judgment motions pending at the close of a bench trial. See 2012 WL 6846386, at *6. Similarly, in Great Am. Ins. Co. v. Crabtree, No. CIV 11–1129 JB/KBM, 2012 WL 3656500 (D.N.M. Aug. 23, 2012)(Browning, J.), the Court denied a plaintiff's motion to strike exhibits attached to the defendant's motion to dismiss, because they were neither pleadings nor irrelevant. See 2012 WL 3656500, at *18. In Applied Capital, Inc. v. Gibson, the Court refused the plaintiff's request to strike a motion to dismiss because rule 12(f) applies only to pleadings, and not to a motion to dismiss. See 2007 WL 5685131, at *18.

### LAW REGARDING SURREPLIES

D.N.M. LR.-Civ. 7.4(b) provides: "The filing of a surreply requires leave of the Court." D.N.M.LR-Civ. 7.4(b). "A surreply is appropriate and should be allowed where new arguments are raised in a reply brief." Walker v. THI of N.M. at Hobbs Center, 2011 WL 2728344, at *1 (D.N.M. July 6, 2011)(Browning, J.). See Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 229 F.R.D. 201, 204 (D.N.M. 2005)(Browning, J.). The Court has granted leave to file surreply where a party has made arguments and presented new evidence that did not appear in the party's moving papers. See Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 229 F.R.D. at 204.

## LAW REGARDING DEFAULT JUDGMENTS UNDER RULE 55

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for a default judgment. First, a party must obtain a Clerk's entry of default. See Fed.R.Civ.P. 55(a)("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); Watkins v. Donnelly, 551 F. App'x 953, 958 (10th Cir. 2014)(unpublished)("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment."). Second, the party must either request the clerk to enter default judgment when the claim is for "a sum certain or a sum that can be made certain by computation," Fed.R.Civ.P. 55(b)(1), or, "[i]n all other cases, the party must apply to the court for a default judgment," Fed.R.Civ.P. 55(b)(2).

After entering default judgment, a district court takes all of the well-pleaded facts in a complaint as true. See United States v. Craighead, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished); Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." (citations omitted)). "If defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." United States v. Craighead, 176 F. App'x at 925 (alteration in original)(quoting 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2688 (3d ed. 1998)). See Fed.R.Civ.P. 8(d)("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when

not denied in the responsive pleading.").  A court may enter a default judgment for a damage award without a hearing if the amount claimed is "one capable of mathematical calculation." Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d 1189, 1202 (D.N.M.2007)(Browning, J.) (quoting H.B. Hunt v. Inter–Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985))(citing Venable v. Haislip, 721 F.2d at 300).  "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  10A Wright & Miller, supra, § 2688 (quoting Pope v. United States, 323 U.S. 1, 12 (1944)).  "If the damages sum is not certain or capable of easy computation, the court may" conduct such hearings or order such references as it deems necessary.  Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d at 1202 (citing Beck v. Atl. Contracting Co., 157 F.R.D. 61, 64 (D.Kan. 1994)(Lungstrum, J.).  See Fed.R.Civ.P. 55(b)(2)(B)("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

"Default judgments are a harsh sanction."  Ruplinger v. Rains (In re Rains), 946 F.2d 731, 732 (10th Cir. 1991).  The Court has noted that, "[b]ecause default judgment is a harsh sanction involving a court's power to enter and enforce judgments regardless of the merits of a case, courts do not favor such a sanction 'purely as a penalty for delays in filing or other procedural error.'"  Noland v. City of Albuquerque, No. CIV 08–0056 JB/LFG, 2009 WL 2424591, at *1 (D.N.M. June 18, 2009)(Browning, J.)(quoting In re Rains, 946 F.2d at 733).

> [S]trong policies favor resolution of disputes on their merits: the default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.

In re Rains, 946 F.2d at 732-33 (citations omitted)(internal quotation marks omitted).  See Noland v. City of Albuquerque, 2009 WL 2124591, at *1 (denying motion for default judgment, because the counsel for the defendant City of Albuquerque "entered an appearance three days after Noland filed his motion for default judgment," and, thus, the Court could not "reasonably say that the City of Albuquerque is an essentially unresponsive party, that the adversary process has been halted, or that Noland faces interminable delay because of the City of Albuquerque's actions").

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed.R.Civ.P. 55(c).  "[T]he good cause required by Fed.R.Civ.P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed.R.Civ.P. 60(b)." Pinson v. Equifax Credit Info. Servs., Inc., 316 F. App'x 744, 750 (10th Cir. 2009)(unpublished) (quoting Dennis Garber & Assocs., Inc. v. Pack–Tech Int'l Corp., 115 F.3d 767, 775 n.6 (10th Cir. 1997)).  The distinction between setting aside an entry of default and setting aside a default judgment "reflects the different consequences of the two events and the different procedures that bring them about." 10A Wright & Miller, supra, § 2692.

> [T]he clerk or the court may enter a default upon the application of the nondefaulting party.  The entry simply is an official recognition of the fact that one party is in default, as, for example, for failure to comply with the rules, to appear as scheduled, or to prosecute the case with due diligence. The entry is an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).
>
> In sharp contrast, a final default judgment is not possible against a party in default until the measure of recovery has been ascertained, which typically requires a hearing, in which the defaulting party may participate; in some situations, a jury trial may be made available to determine an issue of damages.  Moreover, the entry of a default judgment is a final disposition of the case and an appealable order.

. . . .

> Additional differences between relief from the entry of a default and from a default judgment appear in the grounds that will support the motion being granted. Stated generally, the defaulting party is not entitled to relief from a judgment as a matter of right under Rule 60(b). The movant must present a justification supporting the relief motion and must establish his contentions if challenged. Although whether relief will be granted is a matter within the sound discretion of the trial court, the vacation of a default judgment is subject to the explicit provisions of Rule 60(b), which places additional restraints upon the court's discretion. The motion to set aside a default entry, on the other hand, may be granted for "good cause shown," which gives a court greater freedom in granting relief than is available in the case of default judgments.

10A Wright & Miller, supra, § 2692 (footnotes omitted).

While there are some differences between setting aside the entry of default and setting aside a default judgment, there are some important similarities, including that courts may consider the same factors: whether the party willfully defaulted, whether setting aside the entry of default or default judgment would prejudice the non-movant, and whether the movant has presented a meritorious defense. See Pinson v. Equifax Credit Info Servs., Inc., 316 F. App'x at 750 ("In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" (quoting Dierschke v. O'Cheskey (In re Dierschke), 975 F.2d 181, 183 (5th Cir. 1992)); United States v. $285,350.00 in U.S. Currency, 547 F. App'x 886, 887 (10th Cir. 2013)(unpublished)("Three requirements must be met when setting aside a default judgment under Rule 60(b): '(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment.'" (quoting United States v. Timbers Pres., 999 F.2d 452, 454 (10th Cir. 1993), abrogated on other grounds by Degen v. United States,

517 U.S. 820, 825 (1996))). The Tenth Circuit has, at times, listed two factors rather than three

for the standard in setting aside a default judgment:

> Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final judgment only if the movant can demonstrate justifiable grounds, including mistake, inadvertence, surprise or excusable neglect. In the case of default judgments, courts have established the further requirement that a movant demonstrate the existence of a meritorious defense. E.g., Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970). A 60(b) motion thus comprehends two distinct aspects[:] justification for relief and a meritorious defense.

In re Stone, 588 F.2d 1316, 1319 (10th Cir. 1978). See Sawyer v. USAA Ins. Co., 839 F. Supp.

2d 1189, 1230 (D.N.M.2012)(Browning, J.)(setting aside a default judgment, because, "when a

plaintiff fails to properly serve a defendant, a default judgment is void and should be set aside

under rule 60(b)(4)"). "Although how these factors will be evaluated and weighed lies within the

discretion of the trial court to a considerable degree, . . . federal courts are willing to grant relief

from a default entry more readily and with a lesser showing than they are in the case of a default

judgment." 10A Wright & Miller, supra, § 2692 (footnotes omitted). "The standard for setting

aside an entry of default under Rule 55(c) is fairly liberal because '[t]he preferred disposition of

any case is upon its merits and not by default judgment.'" Crutcher v. Coleman, 205 F.R.D. 581,

584 (D.Kan.2001)(Vratil, J)(quoting Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970)).

See Applied Capital, Inc. v. Gibson, 2007 WL 5685131, at *20-23 (liberally construing a pro se

defendant's motion to dismiss as a motion to set aside the default, but concluding that the pro se

defendant did not show good cause for the Court to set aside the entry of default, because,

although setting aside the entry of default would not prejudice the plaintiff, the pro se defendant

was "fully aware of the need to answer within the given time limitation and chose not to respond

timely," and he failed to appear at a hearing to support his allegation that he had a meritorious

defense).

## LAW REGARDING INJUNCTIVE RELIEF

Injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. Leviton Mfg. Co., Inc. v. Nicor, Inc., Nos. CIV 04-0424 JB/RHS, CIV 04-1295 JB/ACT, 2007 WL 505796 (D.N.M. Jan. 8, 2007)(Browning, J.)(citing Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)). The Supreme Court and the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir. 2003)("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.")(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986)). The Tenth Circuit has emphasized that "a preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal." Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1298 (10th Cir. 2006)(quoting Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005))(internal brackets omitted).

To establish its right to a preliminary injunction, a moving party must demonstrate: (i) the injunction is necessary to prevent irreparable harm; (ii) there is a substantial likelihood the movant ultimately will prevail on the merits; (iii) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (iv) the injunction would not be contrary to public policy. See Wyandotte Nation v. Sebelius, 443 F.3d 1247,1254-55 (10th Cir. 2006)(quoting Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1171 (10th Cir. 1998)).

## LAW REGARDING REQUESTS FOR TEMPORARY RESTRAINING ORDER

The requirements for the issuance of a temporary restraining order are similar to those for the issuance of a preliminary injunction. Injunctive relief is considered an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have a request granted. Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250 (10th Cir. 2003). In determining whether to grant injunctive relief, courts consider the following four factors: (i) whether the moving party will suffer irreparable injury unless the injunction issues; (ii) whether there is a substantial likelihood that the moving party will eventually prevail on the merits; (iii) whether the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (iv) whether the injunction, if issued, would not be adverse to the public interest. See Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992) (citation omitted); Fed. Lands Legal Consortium ex rel. Robart Estate v. United States, 195 F.3d 1190, 1194 (10th Cir. 1999).

## LAW REGARDING THE ANTI-INJUNCTION ACT

"The Anti-Injunction Act[, 28 U.S.C. § 2283,] provides that a federal court 'may not grant an injunction to stay proceedings in a State court' except in three circumstances: 'as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.'" Weyerhaeuser Co. v. Wyatt, 505 F.3d 1104, 1107 (10th Cir. 2007)(quoting 28 U.S.C. § 2283).

> [T]he Supreme Court . . . explained the purpose of the [Anti-Injunction Act]. The law "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." By prohibiting "frequent federal court intervention" in state court proceedings, the [Anti-Injunction Act] "forestalls . . . 'friction between the state and federal courts.'"

Weyerhaeuser Co. v. Wyatt, 505 F.3d at 1108 (citations omitted).  "[T]he [Anti-Injunction] Act is an absolute prohibition against any injunction of any state-court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act."  Vendo Co. v. Lektro–Vend Corp., 433 U.S. 623, 630 (1977).  "[A]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy."  Vendo Co. v. Lektro–Vend Corp., 433 U.S. at 630 (internal quotation marks omitted).

The Anti-Injunction Act applies to prohibit a federal court from enjoining the court or a party in a state-court proceeding from prosecuting the suit, complying with, or enforcing state-court orders. Section 2283's prohibition cannot be evaded by addressing the order to the parties or prohibiting use of the results of a completed state proceeding.  See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 287 (1970).  "Proceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately to the [Supreme] Court [of the United States]."  Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. at 287. The Supreme Court has long held that the term "proceedings" in state court

> is comprehensive.  It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process.  It applies to appellate as well as to original proceedings; and is independent of the doctrine of res judicata.  It applies alike to actions by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.  The prohibition is applicable whether such supplementary or ancillary proceeding is taken in the court which rendered the judgment or in some other.  And it governs a privy to the state court proceeding . . . as well as the parties of record.  Thus, the prohibition applies whatever the nature of the proceeding, unless the case presents facts which bring it within one of the recognized exceptions [to the Anti-Injunction Act].

Hill v. Martin, 296 U.S. 393, 403 (1935)(footnotes omitted).

## LAW REGARDING SANCTIONS FOR VIOLATING RULES

Federal courts possess inherent powers necessary "'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)(internal quotation omitted)(quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962).  Among those inherent powers is "the ability to fashion an appropriate sanction." Chambers v. NASCO, Inc., 501 U.S. at 44.  See Smith v. Nw. Fin. Acceptance, Inc., 129 F.3d 1408, 1419 (10th Cir. 1997)("A federal court possesses the authority to impose . . . sanctions [as part of] its inherent power to control and supervise its own proceedings.")(internal quotations omitted).  The district court has the inherent power to impose a variety of sanctions on litigants to regulate its docket and to promote efficiency.  See Martinez v. Internal Revenue Serv., 744 F.2d 71, 73 (10th Cir. 1984).  The Tenth Circuit has stated that before sanctioning a respondent based on failure to respond to motions, the district courts must consider: "(1) the degree of actual prejudice to the defendant[s]; (2) the amount of interference with the judicial process; [and] (3) the culpability of the litigant."  Murray v. Archambo, 132 F.3d 609, 611 (10th Cir. 1998)(quoting Hancock v. City of Okla. City, 857 F.2d 1394, 1396 (10th Cir. 1988))(internal quotations omitted)(alteration in the original).  See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). "Dismissal is the appropriate sanction only when these factors outweigh the judicial system's strong predisposition to resolve cases on their merits."  Green v. Dorrell, 969 F.2d at 917.

## LAW REGARDING FILING RESTRICTIONS

"The right of access to the courts is neither absolute nor unconditional."  Tripati v. Beaman, 878 F.2d 351, 353 (10th Cir. 1989).  "Federal courts have the inherent power under 28 U.S.C. § 1651(a) to regulate activities of abusive litigants by imposing carefully tailored restrictions if circumstances warrant."  Keyter v. 535 Members the 110th Congr., 277 Fed.Appx.

825 (10th Cir. 2008)(citing Winslow v. Hunter, 17 F.3d 314, 315 (10th Cir. 1994)). Restrictions are appropriate "where (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and (3) the litigant receives notice and an opportunity to oppose the court's order before it is implemented." Keyter v. 535 Members of 110th Cong., 277 Fed.Appx. at 827. See Tripati v. Beaman, 878 F.2d 351, 354 (10th Cir. 1989)("[I]njunctions are proper where the litigant's abusive and lengthy history is properly set forth."). An injunction without limitations, however, impermissibly leaves permission to file "completely to the whim of the court." Tripati v. Beaman, 878 F.2d at 354. See Landrith v. Schmidt, 732 F.3d 1171, 1175 (10th Cir. 2013); McMurray v. McCelmoore, 445 Fed.Appx. 43, 46 (10th Cir. 2011); French v. Am. Airlines, Inc., 427 Fed.Appx. 666, 668 (10th Cir. 2011); Judd v. Univ. of New Mexico, 149 F.3d 1190 (10th Cir. 1998); United States v. Kettler, 934 F.2d 326 (10th Cir. 1991).

The Court applied these principles in Clark v. Meijer, Inc., 376 F. Supp. 2d 1077 (D.N.M.2004)(Browning, J.). In that case, pro se plaintiffs filed a series of five similar complaints in both state and federal courts against a grocery store chain. See 376 F. Supp. 2d at 1080. Despite a decision dismissing their claims for lack of personal jurisdiction by the Honorable James A. Parker, Senior United States District Judge for the District of New Mexico, the plaintiffs re-filed the same claims in the same district roughly one year later. See 376 F. Supp. 2d at 1086. The Court noted that the plaintiffs' allegations appeared to be "an attempt to harass the Meijer Defendants and to cause a needless increase in the cost of litigation for a matter that other courts have already adjudicated, in whole or part, on five previous occasions." 376 F. Supp. 2d at 1086. The Court entered an order "preventing the Clarks from filing any legal proceedings . . . against any named Meijer Defendant unless a licensed attorney admitted to

practice before this Court signs the pleading or they first obtain permission to proceed pro se."

376 F. Supp. 2d at 1087. Specifically, it required the following process:

> To obtain permission to proceed pro se against the Meijer Defendants named herein, the Clarks must take the following steps:
>
> > 1. File a petition with the Clerk of the Court requesting leave to file a pro se original proceeding against the Meijer Defendants.
> >
> > 2. File with the Clerk a notarized affidavit, in proper legal form, which recites the issues they seek to present, including a short discussion of the legal right asserted and why the Court has personal jurisdiction over the Meijer Defendants. The affidavit must certify, to the best of the Clarks' knowledge, that the legal arguments being raised are not frivolous or made in bad faith, that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, that the new suit is not interposed for any improper purpose such as delay or to needlessly increase the cost of litigation, and that they will comply with all Federal and local rules of this Court. The affidavit must certify why the proposed new suit does not present the same issues decided twice by the Court and why another suit against the Meijer Defendants would not be an abuse of the system.
>
> The Clarks shall submit these documents to the Clerk of the Court, who shall forward them to the Honorable Lorenzo F. Garcia, Chief United States Magistrate Judge, for review to determine whether to permit a pro se original proceeding. Without Judge Garcia's approval, and the concurrence of the assigned Article III Judge, the Court will dismiss the action. If Judge Garcia approves the filing, he shall enter an order indicating that the new proceeding shall proceed in accordance with the Federal Rules of Civil Procedure.
>
> The Plaintiffs shall have ten days from the date of this order to file written objections, limited to fifteen pages, to these proposed sanctions. If the Clarks do not file objections, the sanctions shall take affect twenty days from the date of this order. The filing restrictions shall apply to any matter filed after that time. If the Plaintiffs timely file objections, these sanctions shall not take effect until the Court has ruled on the objections.

376 F. Supp. 2d at 1087-88.

The Court imposed similar sanctions in <u>Stewart v. Shannon</u>, No. CIV 12-0560 JB/KBM,

2012 WL 4950865 (D.N.M. Sept. 24, 2012)(Browning, J.). In that case, an inmate plaintiff

brought "repetitive and abusive" actions against a physician, accusing him of malpractice and

sexual assault. 2012 WL 4950865, at *2. The Court imposed a similar order on the plaintiff:

> Stewart's Complaint is dismissed with prejudice; and Plaintiff Darryl Stewart is hereby notified of the following proposed filing restrictions: Stewart will be enjoined from making further filings in this case except objections to this order and a notice of appeal from a final order, and the Clerk will be directed to return without filing any submissions in this case other than objections and a notice of appeal; Stewart will also be enjoined from initiating further actions in this Court related to the subject matter of this complaint or asserting claims against Defendant Doctor William Shannon unless a licensed attorney admitted to practice in this Court signs the initial pleading or unless Stewart first obtains permission to proceed pro se; to obtain permission to proceed pro se, Stewart must take the following steps:
>
> > 1. File a petition requesting leave to file a complaint or to proceed pro se;
> >
> > 2. Include in or with the petition the following:
> >
> > > A. A list of all lawsuits currently pending or filed previously with the Court, including the name, number, and citation, if applicable, of each case, and the current status or disposition of the case;
> > >
> > > B. A list of all outstanding injunctions or orders limiting Stewart's access to federal court, including orders and injunctions requiring him to seek leave to file matters pro se or requiring him to be represented by an attorney, including the name, number, and citation, if applicable, of all such orders or injunctions; and
> > >
> > > C. A notarized affidavit, in proper legal form, which recites the claims Stewart seeks to present, including a short discussion of the legal basis asserted therefor. The affidavit also must certify that, to the best of Stewart's knowledge, the claims being raised are not frivolous or made in bad faith, but are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the complaint is not interposed for any improper purpose such as delay or to needlessly increase the cost of litigation; and

that he will comply with all federal and local rules
of this court.

> See Tripati v. Beaman, 878 F.2d 351, 353–354 (10th Cir. 1989)(holding that a district court can place filing restrictions on plaintiffs, but the plaintiff is "entitled to notice and an opportunity to oppose the court's order before [they are] instituted."). The Court will direct the Clerk to return to Stewart without filing a proposed initiating pleading described above that counsel has not signed or any petition that does not contain the items listed in paragraphs 1, 2(A), (B), (C) hereinabove. If the petition or proposed pleading is not returned, the Clerk will open a case and forward Stewart's filings to the assigned Judge to review and determine whether to permit Stewart to proceed on his proposed pro se complaint. The Court may summarily dismiss a petition and proposed pleading that Stewart submits if any of the required information is missing, in an improper form, untimely, or insufficient under paragraph (2)(c)) above. The Court also may scrutinize, sua sponte under 28 U.S.C. §§ 1915(e)(2), 1915A, and rule 12(b)(6) of the Federal Rules of Civil Procedure, a proposed pleading described above.

> Within fourteen (14) days from entry of this order, Stewart may file written objections to these proposed filing restrictions; the restrictions will take effect only upon further order of the Court.

2012 WL 4950865, at *2–3. See Elliott v. GEICO, No. CIV–06–0234 JB/ACT, 2007 WL 5231711, at *9 (D.N.M. Aug. 7, 2007)(Browning, J.)(imposing similar restrictions). "We emphasize that the district court's discretion in tailoring appropriate conditions under which Mr. Tripati may commence and prosecute future lawsuits is extremely broad and that we will not disturb that court's choice of requirements absent abuse of that discretion." Tripati v. Beaman, 878 F.2d at 354.

## LAW REGARDING PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition. See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense . . . ."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a

party may serve and file specific written objections to the proposed findings and recommendations."  Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"'The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)). As the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act[,28 U.S.C. §§ 631-639,] including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the

magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expanded the waiver rule to cover objections that are timely but too general. See One Parcel, 73 F.3d at 1060. The Supreme Court -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. See S. Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report). There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or ruling on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." See Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a

Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. See id., at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. See Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations." (citations omitted)). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit noted that the district judge had decided sua sponte to conduct a de novo review despite the lack of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived on appeal because it would advance the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other circuits where district courts elected to address merits despite potential application of waiver rule, but Circuit Courts opted to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's proposed findings and recommendation, on "dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)). The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report. In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995). "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing." Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's Report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009. On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order." Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988). A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record." Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000). "[T]he district court is presumed to know that de novo review is required. Consequently, a brief order expressly stating the court conducted de novo

review is sufficient." Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84). "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise." Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993). The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion." Garcia v. City of Albuquerque, 232 F.3d at 766. The Tenth Circuit has explained that brief district court orders that "merely repeat[] the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1). See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's proposed findings and recommended disposition, the Court has, as a matter of course and in the interests of justice, reviewed the Magistrate Judge's recommendations. In <u>Pablo v. Soc. Sec. Admin.</u>, No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. February 27, 2013)(Browning, J.), the Plaintiff failed to respond to the Magistrate Judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review. <u>See</u> 2013 WL 1010401, at *1, *4. The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." <u>Pablo v. Soc. Sec. Admin.</u>, 2013 WL 1010401, at *4. The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "'the Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.'" <u>Pablo v. Soc. Sec.Admin.</u>, 2013 WL 1010401, at *3 (footnote and internal brackets omitted)(quoting <u>Workheiser v. City of Clovis,</u> No. CIV 12-0485 JB/GBW, 2012 WL 6846401, at *3 (D.N.M. December 28, 2012)(Browning, J.). <u>See Alexandre v. Astrue</u>, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. February 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations . . . to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. The Court determines that they are not, and will therefore adopt the PFRD."); <u>Trujillo v. Soc. Sec. Admin.</u>, No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. February 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting:

"The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not."). This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate. See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate."). The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the magistrate judge's proposed findings and recommendations.

## ANALYSIS

The Second PFRD recommended denying all Motions to Amend that were then pending, denying all then-pending Motions For Default Judgment, granting all then-pending Motions to Dismiss, granting the motion for more definite statement, denying all then-pending Motions for Injunctive Relief, denying the request for subpoena, granting the Motion to Strike and striking the surreply, denying the Motion for Leave to file a Surreply, denying the then-pending Motions for Sanctions, granting the Motion to Impose Filing Restrictions and ordering Serna to show cause why filing restrictions should not be imposed, ordering Serna to show cause why claims against the Websters should not be dismissed, and dismissing with prejudice all purported criminal charges. See PFRD at 43-44. Judge Lynch also held in abeyance Serna's Motion to Have the Honorable Browning Hear all Dismissed Briefs, filed February 21, 2017 (Doc. 53), which is a request for hearing. See Order at 2, filed May 4, 2017 (Doc. 119).

In the three and a half months since the Second PFRD was filed, new filings include: the Websters' Motion to Dismiss, filed May 8, 2017 (Doc. 120);  Serna's Request to the Honorable Judge Browning: Temporary Restraining Order Filed on State District Court and Evidentary [sic] Hearing and Recusal of the Judge Lynch for Fraud Upon the Court, filed May 8, 2017 (Doc. 121); Serna's Request to Judge Browning: Emergency Order to Cease and Desist Collections on False State District Court Award, filed May 11, 2017 (Doc. 123); Plaintiff's Objection to Dismissal of Complaint, filed May 12, 2017 (Doc. 125), which responds to the Websters' motion to dismiss, and in which Serna makes additional allegations and requests sanctions and discovery; Serna's Emergency Request from Judge Browning: Order to Bernalillo County Sheriff's Department to Return Serna's Funds, filed May 12, 2017 (Doc. 126), which is another Serna motion for injunctive relief in which she seeks an order directing the Bernalillo County Sheriff's Office to return certain property seized in execution of a state judgment; Serna's Relief from Default Judgment Under Rule 55 and 60(b), filed May 15, 2017 (Docs. 127, 128, 129, 130, 131, 132, 138), which are motions for default judgments against Well, Simon, Chisholm, David Webster, Margette Webster, and Crowley; Serna's Corrections to Defendant's Codes per the Court's Entry of May 04, 2017, filed May 30, 2017 (Doc. 134), which the Court construes as another motion to amend; Serna's Objection to the Second Proposed Findings and Recommended Disposition and Grant Judgment in Favor of the Plaintiff on the Findings, filed May 30, 2017 (Doc. 135); Serna's Objections and Answers to Proposed Findings and Recommendations and Motion to Withdraw the Limited Liability Company until Counsel is Procured, filed June 13, 2017 (Doc. 137), Serna's second set of "objections" to the Second PFRD and a motion to withdraw the LLC; Defendant Simon's Motion to Strike and Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(e), filed July 24, 2017 (Doc. 139); Serna's

Request Cancellation of Defendant Simon's Unscrupulous Motion to Strike Complaint, filed July 27, 2017 (Doc. 140), which the Court construes as a motion to strike Simon's Motion to Strike, and as a motion for sanctions; Serna's Plaintiff's Motion for Leave to Amend Complaint and add Additional Parties Plus Relief and Memorandum of Law in Support, filed July 31, 2017 (Doc. 141), which is another motion for leave to amend in which Serna seeks to add the Bernalillo County Sheriff's Office and individual deputies as parties defendant; Serna's Defenant Webster in Violation of Rule 5 Serving Pleadings on Other Papers on all Parties, filed August 10, 2017 (Doc. 144), which the Court construes as a motion for injunctive relief and for Rule 11 sanctions; Serna's Objection to Defendant Simon's Motion to Strike and Dismiss Plaintiff's Complaint, filed August 11, 2017 (Doc. 145), which the Court construes as a response to the motion to strike and as a motion for sanctions; and Serna's Addendum Request: Office of the Clerks to Mail Defendant's Websters Copies of Court Pleadings Due to "Threats" on Plaintiff, filed August 18, 2017 (Doc. 146), which the Court construes as a motion for injunctive relief.

Judge Lynch held in abeyance the Motion to Have the Honorable Browning Hear all Dismissed Briefs that Serna filed on February 21, 2017. Serna seeks a hearing on all pending motions. D.N.M.LR-Civ. 7.6(a) states that "[a] motion will be decided on the briefs unless the Court sets oral argument." The Court concludes that oral argument will not be beneficial and therefore denies the request for hearing.

Serna was granted an extension of time to file Objections to the Second PFRD. See Order, filed May 5, 2015 (Doc. 124). Thus, Serna timely filed her Objections on May 30, 2017. In her Objections, Serna does not address the facts or law that the PFRD presented. Instead, she repackages her claims and cites no authority to aid the Court. She also alleges, without any evidence, that Judge Lynch participated in impermissible ex parte communications. According

to Serna, such communications are the only way that Judge Lynch could recommend ruling against her. Serna however requests that the Court dismiss certain Defendants -- Molina, Rodriguez, Garcia, Galanter, and Biernoff. See Objection to the Second Proposed Findings and Recommended Disposition and Grant Judgment in Favor of the Plaintiff on the Findings at 32, 37, 38, filed May 30, 2017 (Doc. 135). Serna also requests an unspecified sanction against Molina, for unspecified reasons.

Serna then filed Objections and Answers to Proposed Findings and Recommendations and Motion to Withdraw the Limited Liabilty [sic] Company Until Counsel is Procured, filed June 13, 2017 (Doc. 137). The Court construes this as a second set of objections to the Second PFRD.

The Tenth Circuit has held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060. "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted). In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d at 1426. See United States v. Garfinkle, 261 F.3d at 1031 ("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."). In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the

magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).

Serna's Objections to the Second PFRD are not specific and do not serve the interest of focusing the Court's attention, except to the extent that she seeks dismissal of Molina, Rodriguez, Garcia, Galanter, and Biernoff. Serna's Second Objections is not timely and therefore not relevant to the Court's consideration of the Second PFRD. Without specific objections, as United States v. Raddatz requires, the Court reviews the Second PFRD to determine whether it is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. See Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.

The Court has reviewed the Second PFRD under this standard. Serna did not meaningfully object to any of the facts or the legal analysis in the Second PFRD. The Court concludes that the recommendations are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. Accordingly, the Court will: (i) adopt the Second PFRD; (ii) dismiss Molina, Rodriguez, Garcia, Galanter, and Biernoff; (iii) overrule Serna's Objections, except to the extent that Serna seeks dismissal of the above-mentioned Defendants; (iv) deny as moot Serna's motion to withdraw the Limited Liability Company as the LLC has already been removed as a party-plaintiff to this action, see Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition, filed June 2, 2017 (Doc. 136)(dismissing Serna & Associates Construction Co., LLC's claims without prejudice); (v) deny Serna's Motions to Amend; (vi) deny Serna's Motions for Default Judgment; (vii) grant Crowley's Motion to Dismiss; (viii) grant the State Defendants' Motion to Dismiss; (ix) grant Calvert's Motion to Dismiss; (x) grant New Mexico Construction Industries Division's Motion to Dismiss; (xi) grant Judge Nash's Motion to Dismiss; (xii) grant Simon's Motion For More Definite Statement; (xiii) deny all of Serna's Motions for Injunctive Relief; (xiv) deny Serna's Request for Subpoena; (xv) grant the

State Defendants' Motion to Strike Serna's unauthorized surreply; (xvi) deny Serna's Motion for Leave to File surreply (Doc. 90); (xvii) deny Serna's Motions for Sanctions (Docs. 58, 91); (xviii) dismiss with prejudice any purported criminal charges; and (xix) grant the State Defendants' Motion for Order Imposing Filing Restrictions; and (xx) order Serna to show cause, in writing, why the Court should not impose filing restrictions against her, as further explained below.

The Court turns now to the motions filed after Judge Nash filed the Second PFRD. Ordinarily, the Court would return the matter to the Magistrate Judge for further findings and recommendations as appropriate. Under these circumstances, however, the Court concludes that the pending motions are duplicative of matters that the Second PFRD addresses and have become vexatious. Accordingly, the Court will resolve the remaining pending motions.

The Websters filed their Motion to Dismiss Complaint on May 8, 2017 (Doc. 120). Because the Websters proceed pro se, the Court construes this motion as to dismiss pursuant to rule 12(b)(6) for failure to state a claim upon which relief can be granted. The Websters seek dismissal of any purported criminal charges against them, dismissal of any other claims against them, and an admonishment of Serna. See Motion to Dismiss Complaint at 1-3.

Serna filed a Response on May 12, 2017 (Doc. 125), alleging that the Websters have been evading service of process and that the record of the state proceedings has been impermissibly altered. Serna then requests that discovery open in this matter and seeks unspecified sanctions against the Websters and Judges Nash and Brickhouse, as well as damages of one million dollars. Response at 4.

The Court concurs with the Websters that the Complaint, in any of its purported iterations, lacks sufficient detail to make out a claim against them. Serna presents only bald allegations that the Websters have committed various crimes, but provides no concrete factual allegations to

support those claims.  The Court thus grants the Websters' motion to dismiss all claims against them and denies Serna's request for discovery and sanctions in this matter.  Because the Court addresses the Websters' motion as a Motion to Dismiss under rule 12(b)(6), it is unnecessary, under the circumstances, to evaluate any alleged service issues.

The next motion is Serna's Request to the Honorable Judge Browning: Temporary Restraining Order Filed on State District Court and Evidentiary Hearing and Recusal of the Judge Lynch for Fraud Upon the Court, filed May 8, 2017 (Doc. 121.).  Serna apparently seeks another TRO on the state court proceedings, but does not explain what relief she desires.  In any event, under the circumstances, the Anti-Injunction Act prohibits the Court from issuing a restraining order or other injunctive relief against the state court.  The Court will deny the request.  Serna then makes additional baseless allegations in support of her request to disqualify Judge Lynch.  With no evidence of any kind, Serna alleges that Judge Lynch has participated in ex parte communications and has somehow used his position as a United States Magistrate Judge to shield Judge Brickhouse.  Serna has no basis to make such bald assertions and has presented no reason to disqualify Judge Lynch from this case. The Court will deny the motion.

On May 11, 2017, Serna filed another Motion for Injunctive relief, titled Request to Judge Browning: Emergency Order to Cease and Desist Collections on False State District Court Award (Doc. 123).  As with Serna's previous Motions for Injunctive Relief, she asks the Court to interfere with a pending state court case.  Specifically, she asks that the Court issues a cease and desist order to the Websters, the Bernalillo County Sheriff's Office, and the state district court. Serna then alleges that Judge Lynch somehow got involved in the state court case and "gave the sheriff's dept. the right to collect from Serna, not the company."  Request to Judge Browning: Emergency Order to Cease and Desist Collections on False State District Court Award at 2.  First, Serna, again, has

no evidence that Judge Lynch was involved in the state court case -- because it did not happen. As above, the Anti-Injunction Act prohibits the Court from interfering with the state court case. Serna's recourse, if any, is through the state court system and an ultimate appeal to the Supreme Court of the United States. The Court will deny the motion.

The next day, May 12, 2017, Serna filed another motion for Injunctive Relief, this one entitled Emergency Request from Judge Browning: Order to Bernalillo County Sheriff's Department to Return Serna's Funds, filed May 12, 2017 (Doc. 126.). Serna asks this Court to Order the Bernalillo County Sheriff's Office to return funds seized from her home during collection on a judgment issued by the state court. For the same reasons discussed above, the Court will deny the Motion.

On May 15, 2017, Serna filed Motions for Default Judgment against Wells, Simon, Chisholm, David Webster, Margette Webster, and Crowley. Rule 55 governs the entry of default judgment and prescribes a two-step process. First, a party must seek and, if appropriate based on the record, the Clerk of Court must enter default. Second, the party must move for default judgment. In this case, Serna did not seek or obtain a default against any of the listed Defendants. Therefore, the Court cannot properly grant default judgment. Further, the Court notes that all of the above Defendants, except for Chisholm, have appeared and participated in this case. The Court will deny the Motions for Default Judgment.

Serna then filed a document entitled Corrections to Defendant's Codes per the Courts Entry of May 04, 2017, filed May 30, 2017 (Doc. 134), which the Court construes as a Motion to Amend. Serna attempts to amend the Complaint to remove some of the purported criminal charges against twenty four of the Defendants, and to add charges to four of the Defendants.

The Court has already dismissed, with prejudice, all purported criminal charges. "[A]

private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," and cannot prosecute a claim for which relief can be granted if the citizen is trying to prosecute criminal statutes. See Diamond v. Charles, 476 U.S. 54, 64 (1986)(quotation omitted). No amount of amendment will grant Serna the ability to bring criminal charges in a civil cause of action. Because the purported criminal charges would be subject to dismissal under rule 12(b)(6), allowing Serna leave to amend her complaint in this manner would be futile. The Court will deny the motion to amend.

On June 15, 2017, Serna filed her Request for this Objection as Timely on Objection to Dismissal of Defendant Chisholm and Accept His Default Judgment (Doc. 138), which the Court construes as another motion for entry of default judgment against Chisholm. For the reasons explained above, the Court cannot properly grant Serna's motion will deny the motion.

Simon filed a Motion to Strike, filed July 24, 2017 (Doc. 139), and dismiss Serna's Complaint against him pursuant to rule 12(e). Simon seeks dismissal of the Complaint against him, because, he contends, Serna failed to file an amended complaint within ten days of the Order adopting the PFRD. Simon, however, misstates which PFRD recommended granting the original motion for more definite statement. Simon cites Doc. 103, which the Court later adopted. In fact, it was the Second PFRD, Doc. 118, which recommended granting the motion for more definite statement. See Second PFRD at 39. The Court has now adopted the Second PFRD's recommendation that the Court grant Simon's original Motion for More Definite Statement. The Court agrees that the Complaint, as drafted, is incomprehensible as to Simon. While the Court cannot properly grant Simon's motion to dismiss pursuant to rule 12(e) because Serna has not, in fact, failed to amend despite the opportunity to do so, the Court reminds Serna that she must file an amended complaint as to Simon within ten days from the date of entry of this Order. The

Court will deny Simon's Motion.

Rather than filing a standard response to Simon's Motion to Strike, Serna filed a Request Cancellation of Defendant Simon's Unscrupulous Motion to Strike Complaint on July 27, 2017. (Doc. 140). In this document, Serna requests that the Court deny Simon's motion, strike Simon's motion, and sanction Simon and his attorney. The Court has already denied Simon's motion. Serna cites no authority, and the Court is not aware of any, to render striking Simon's motion appropriate. Additionally, Serna presents no evidence—beyond her base allegations of impropriety -- that would warrant a sanction against Simon and his attorney. To the extent that this request is a motion, the Court will deny the motion.

On July 31, 2017, Serna filed Plaintiff's Motion for Leave to Amend Complaint and Add Additional Parties Plus Relief and Memorandum of Law in Support, filed July 31, 2017 (Doc. 141). Serna now seeks to add the Bernalillo County Sheriff's Office, Deputy Priezam, Deputy Carlos Gutierrez, Deputy Phil Gonzales, Deputy Maestas, Chief Deputy Manual Gonzalez, and sixteen John Doe deputies. Motion for Leave to Amend Complaint and Add Additional Parties Plus Relief and Memorandum of Law in Support at 3. Serna seeks to add the individual deputies in their individual and official capacities, and seeks one-hundred-thousand dollars in damages from each deputy. The basis for relief against the deputies and the Sheriff's Office is that they served a writ, written by Judge Nash, and seized twenty-thousand dollars in execution of the writ. Serna alleges that the deputies—unspecified individuals--used excessive force because of "the physical presence of so many officers." Motion for Leave to Amend Complaint and Add Additional Parties Plus Relief and Memorandum of Law in Support at 3.

The Court denies Serna's Motion for Leave to Amend Complaint and Add Additional Parties Plus Relief and Memorandum of Law in Support. The Eleventh Amendment to the

Constitution of the United States of America prohibits official capacity claims and Serna has not adduced any evidence suggesting that immunity has been waived. The individual capacity claims are likewise subject to dismissal, because qualified immunity protects the deputies and Serna has not stated any facts suggesting that the deputies violated a clearly established Constitutional right.

On August 10, 2017, Serna filed a document entitled Defendant Webster in Violation of Rule 5 Serving Pleadings and Other Papers on All Parties (Doc. 144). Serna asks the Court to "dismiss the illegal restraining order imposed on the Plaintiff in state district court." Defendant Webster in Violation of Rule 5 Serving Pleadings and Other Papers on All Parties at 2. The Anti-Injunction Act prohibits the Court from interfering in state court matters. The Court will deny the request. Serna also seeks rule 11 sanctions against the Websters. Serna did not alert the Websters to her intent to file a rule 11 motion, and the Court will deny the motion for failure to comply with rule 11's safe harbor provision. The Court has already granted the Websters' motion to dismiss; therefore it should be unnecessary for Serna to send additional materials to the Websters. The Court therefore denies Serna's Motion.

On August 11, 2017, Serna filed another document titled Objection to Defendant Simon's Motion to Strike and Dismiss Plaintiff's Complaint (Doc. 145). Serna asks the Court to deny the Objection to Defendant Simon's Motion to Strike and Dismiss Plaintiff's Complaint and to sanction Simon and his counsel. The Court has already denied Simon's Objection to Defendant Simon's Motion to Strike and Dismiss Plaintiff's Complaint. The Court will therefore deny Serna's request.

Finally, Serna filed Addendum Request: Office of the Clerks to Mail Defendant's Websters Copies of Court Pleadings Due to 'Threats' on Plaintiff on August 18, 2017 (Doc. 146). The Court has already addressed this matter and dismissed the Websters from this case. The Court

will deny therefore deny the Addendum Request: Office of the Clerks to Mail Defendant's Websters Copies of Court Pleadings Due to 'Threats' on Plaintiff on August 18, 2017 as moot.

The Court turns now to the issue of filing restrictions. This litigation, in one form or another, has persisted for over a decade. The underlying litigation has gone up and down the New Mexico court system, and Serna has lost at every turn. Serna has been so persistent in her erroneous interpretation that every level of the New Mexico courts have imposed filing restrictions on Serna because of her frivolous and abusive filings. See Order Limiting the Filing of Further Substantive Motions Without Prior Court Approval (dated Marcy 15, 2016), filed February 9, 2017 (Doc. 34-5)(imposing filing restrictions in the Court of Appeals of New Mexico); Order on Remand (dated July 11, 2016), filed February 9, 2017 (Doc. 34-6)(imposing filing restrictions in the Second Judicial District Court, County of Bernalillo, State of New Mexico); Order (dated September 12, 2016), filed February 9, 2017 (Doc. 34-7)(imposing filing restrictions in the Supreme Court of New Mexico). Despite having three levels of the judiciary explain the flaws in her argument, Serna persists.

Serna's history with these Defendants is lengthy and abusive, as set forth in the state court record and as the voluminous and duplicative filings in this case make clear. The Court therefore proposes to impose the following filing restrictions:

1. Serna may file one amended complaint as only to Defendants Chisholm, Simon and the Estate of Paul Becht. Serna must file the amended complaint within ten days from this Order's date of entry, and may not contain criminal charges of any kind.

2. Serna may show cause, in one written document, why the Court should not impose filing restrictions against her. Serna must submit this document within ten days from this Order's date of entry and must not contain spurious allegations of bribery, collusion, or other fancies that the world has conspired against her.

3. The Court directs the Clerk of Court not to accept any other filings, other than those described in (1) and (2), from Serna in this matter until further Court Order.

4. Unless Serna files a timely and compliant response, the Court will impose the following restrictions on Serna on the eleventh day after this Order's date of entry:

   a. To obtain permission to proceed pro se against the Defendants named herein, Serna must take the following steps:

      i. File a petition with the Clerk of the Court requesting leave to file a pro se original proceeding against the Defendants.

      ii. File with the Clerk a notarized affidavit, in proper legal form, which recites the issues she seeks to present, including a short discussion of the legal right asserted and why the Court has jurisdiction over the matter. The affidavit must certify, to the best of Serna's knowledge, that the legal arguments Serna is raising are not frivolous or made in bad faith, that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, that she does not interpose the new suit for any improper purpose such as delay or to needlessly increase the cost of litigation, and that she will comply with all Federal and local rules of this Court. The affidavit must certify why the proposed new suit does not present the same issues that this Court has decided and the new Mexico courts have repeatedly addressed and why another suit against these Defendants would not be an abuse of the system.

5. Serna shall submit these documents to the Clerk of the Court, who shall forward them to the Chief United States Magistrate Judge for review to determine whether to permit a pro se original proceeding. Without the Chief Magistrate Judge's approval, and the concurrence of the assigned Article III Judge, the Court will dismiss the action. If the Chief Magistrate Judge approves the filing, he or she shall enter an order indicating that the new proceeding shall proceed in accordance with the Federal Rules of Civil Procedure.

6. Serna shall have ten days from the date of this order to file written objections, limited to fifteen pages, to these proposed restrictions. If Serna does not file objections, the restrictions shall take affect eleven days from the date of this order. The filing restrictions shall apply to any matter filed after that time. If Serna timely files objections, these restrictions shall not take effect until the Court has ruled on the objections.

**IT IS SO ORDERED** that: (i) the Second Proposed Findings and Recommended Disposition, filed May 4, 2017 (Doc. 118), is adopted; (ii) Plaintiff Serna's motions for default judgment (Docs. 26, 27, 28, 29, 30, 31, 32, 66, 77, 92, 115, 127, 128, 129, 130, 131, 132, 138) are denied; (iii) Serna's motions to amend (Docs. 7, 8, 25, 47, 61, 87, 93, 94, 134, 141) are denied; (iv) all motions to dismiss pursuant to Rule 12(b) (Docs. 23, 33, 34, 36, 40, 120) are

granted; (v) Serna's motions for injunctive relief and for sanctions (Docs. 11, 20, 21, 24, 58, 91, 94, 96, 98, 104, 105, 121, 123, 125, 126, 140, 141, 144, 145, 146) are denied; (vi) Defendant Robert Simon's motion for more definite statement (Doc. 38) is granted; (vii) Serna's requests for discovery devices (Docs. 61, 125) are denied; (viii) the Judicial Defendants' motion to strike (Doc. 84) Serna's unauthorized surreply (Doc. 83) is granted; (ix) Serna's motion for leave to file surreply (Doc. 90) is denied; (x) Defendants Cindy Molina, Lynette Rodriguez, Madeline Garcia, Sally Galanter, and Ari Biernoff are dismissed; (xi) the Judicial Defendants' motion for filing restrictions (Doc. 99) is granted; (xii) Serna is ordered to show cause why filing restrictions should not be imposed against her, as outlined above; (xiii) Serna's motion for hearing (Doc. 53) is denied; (xiv) Simon's motion to strike and to dismiss (Doc. 139) is denied; (xv) all purported criminal claims against all Defendants are dismissed with prejudice; and (xiv) Serna will file one amended complaint as to Defendants Alex Chisholm, Estate of Becht, and Robert Simon within ten days from the date of entry of this Order.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Emma Serna d/b/a Serna & Associates
   Construction Co., LLC
Albuquerque, New Mexico

     *Plaintiff pro se*

Margette Webster
Albuquerque, New Mexico

     *Defendant pro se*

David Webster
Albuquerque, New Mexico

    *Defendant pro se*

Hector Balderas
   Attorney General for the State of New Mexico
Ari Biernoff
   Assistant Attorney General
Office of the Attorney General
Santa Fe, New Mexico

    *Attorneys for Defendants State of New Mexico, Carl Butkus, Cindy Molina, Alan Malott,*
    *Beatrice Brickhouse, Bobby Jo Walker, James O'Neal, Joey Moya, Amy Mayer, Garcia*
    *Madeliene, Arthur Pepin, Monica Zamora, Cheryl Ortega, and Nan Nash*

William David Grieg
The Law Office of William D. Grieg, LLC
Albuquerque, New Mexico

    *Attorneys for Defendant Clayton Crowley*

Alex Chisolm

    *Defendant pro se*

Terry R. Guebert
Robert Gentile
Guebert Bruckner, PC
Albuquerque, New Mexico

-- and --

Seth Sparks
Rodey, Dickason, Sloan,
   Akin & Robb
Albuquerque, New Mexico

    *Attorneys for Defendant Robert Bob Simon*

Estate of Paul F. Becht
Albuquerque, New Mexico

    *Defendant pro se*

John P. Burton
Charles R. Hughson
Rodey, Dickason, Sloan,
    Akin & Robb
Albuquerque, New Mexico

      *Attorneys for Defendant Carl A. Calvert*

Kenneth C. Downes
Kenneth C. Downes & Associates, PC
Corrales, New Mexico

      *Attorneys for Defendants Martha Murillo, Sally Galanter, New Mexico Construction Industries Division, Robert Unthank, Martin Romero, and Amanda Roybal*

John Wells

      *Defendant pro se*